NUMBER 13-05-026-CV

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

TEXAS MUTUAL INSURANCE COMPANY,                     Appellant,

 

                                           v.

 

ROBERT S. HOWELL, D.C., AND 

FIRST RIO VALLEY MEDICAL, P.A.,                            Appellees.

 

 

 

                  On appeal from the 107th
 District Court

                          of Cameron
County, Texas.

 

 

 

                     MEMORANDUM OPINION

 

                 Before Justices Yañez,
Castillo and Garza

                  Memorandum Opinion by Justice Castillo

 








This interlocutory
appeal is brought from an order issued by the Cameron County trial court,
granting an anti-suit injunction to preclude appellant, Texas Mutual Insurance
Company ("Texas Mutual"), from prosecuting a later-filed declaratory
judgment action in Travis County, Texas. 
In issue is the propriety of the anti-suit injunction.  We affirm the order of the trial court.

I.  Background

The underlying suit
was filed in December 2001 in Cameron County, Texas, by Robert S. Howell, D.C.,
First Rio Valley Medical, P.A. (collectively "Howell"), and several
other healthcare providers.  Howell named
multiple workers' compensation insurance carriers, including Texas Mutual, as
defendants.[1]  Howell seeks below to certify a class action
of healthcare providers located throughout Texas.  Howell claims that Texas Mutual and other
defendants failed to comply with applicable portions of the Texas Labor Code
and accompanying rules by failing to include interest in delinquent payments
for services rendered to workers' compensation claimants.  

In April 2002, Texas
Mutual filed a declaratory judgment action in Travis County, Texas, naming as
defendants not only Howell but also additional individuals located in Beaumont,
Texas, and the Texas Workers' Compensation Commission ("Commission").[2]  In its Travis County action, Texas Mutual
seeks a declaration as to whether interest is due on such payments, under the
applicable statute and Commission rules. 














On November 18, 2004,
Howell filed an application for a temporary restraining order and temporary
injunction in the underlying matter to halt the Travis County litigation.[3]  Howell alleged the Travis County suit was an
attempt by Texas Mutual to circumvent the trial and appellate courts'
determinations that venue was proper in Cameron County.[4]  The temporary injunction hearing was held
December 10, 2004.  Howell argued that
allowing another action to proceed in another jurisdiction would harm the
underlying plaintiffs and hinder the Cameron County court's jurisdiction.  Texas Mutual countered that the Travis County
action was substantively different and involved different parties,[5]
such that it would not divest the Cameron County court of jurisdiction, and
that Howell had never requested that the Travis County proceedings be
abated.  

The trial court
announced at the December 10 hearing that it would grant the injunction, and
its order to that effect was entered January 6, 2005, after the parties had the
opportunity to confer and provide input as to its form.  The trial court's findings include the
following:

(1) in this Cameron
County action, plaintiffs propose a class action and "seek reimbursement
of interest in accordance with Texas Labor Code section 413.019" (see
Tex. Lab. Code Ann. ' 413.019 (Vernon
1996));[6]

 

(2) "a similar
case pending in Beaumont" "has been abated in favor of [the Cameron
County case];"[7]

 

(3) while this case
has been pending, numerous defendant carriers have settled and "numerous
non-suits have been filed;"

 

(4) the case was
removed to the United States District Court, and then remanded back to this
Court;

 








(5) plaintiffs have
brought causes of action under "multiple theories, including [the
declaratory judgment act];"[8]

 

(6) "multiple
motions to transfer venue and pleas to the jurisdiction" have been denied
(by both the trial court and appellate courts) in favor of the Cameron County
court's jurisdiction, and the court's rulings on joinder have similarly been
affirmed; 

 

(7) Texas Mutual's
allegations that "Travis County is the mandatory venue" because this
case may involve the determination of a Commission rule under Texas Government
Code section 2001.038[9]
was "previously rejected by this Court and all reviewing courts" and
is incorrect, inasmuch as

 

(a) plaintiffs have
not identified a single Commission rule that would impair or threaten their
legal right, and 

 

(b)
"substantively the same arguments" were previously raised by Texas
Mutual and rejected by the trial court, the Thirteenth Court of Appeals, and
the Texas Supreme Court;

 

(8) the declaratory
judgment action in Travis County was filed after the venue determination in
this matter;

 

(9) the action for
declaratory relief in Travis County seeks declarations pertaining to the total
proposed class members, and "poses a threat to [the Cameron County]
court's jurisdiction to issue rulings in this case seeking class action
status;"

 

(10) the Cameron
County trial court "acquired jurisdiction over the parties and the subject
matter of the dispute prior to and to the exclusion of all other courts;"

 








(11) "the
injunction is necessary to protect public policy" and a determination as
to whether interest is "statutorily due [to plaintiffs] when payment for
services is issued on or after the 60th day from the date a medical bill is
received by the carrier;"

 

(12) "Tex. Lab.
Code '413.019 is the crux of
the proposed class action;"

 

(13) the threat of
multiple litigation, "entanglements between cases," "the potential
for inconsistent rulings and interpretations," and inconsistent
obligations of the parties "creates an essential need for this matter to
be resolved in this Court" and to do otherwise would be a "waste of
judicial resources and against public policy;"

 

(14) to permit a party
disagreeing with the rulings of this court to proceed in another County works
against the public policy of finality of a court's rulings;

 

(15) public policy
disfavors simultaneous litigation in two courts, which "would most probably
work an irreparable miscarriage of justice" because of the need to
litigate each issue "separately in two different forums," and the
"potential for conflicting rulings on incidental as well as case
determinative issues" and, further, requiring "numerous plaintiffs
and numerous defendants to have attendant counsel at two simultaneous trial
courts and appellate courts with possible differing results would work an
irreparable injury;"

 

(16) "the
declaratory judgment sought by Texas Mutual in Travis County seeks attorneys'
fees against the purported class representatives for measures that are
essentially defensive in [Cameron County]," reflects "an improper
trial strategy designed to deter and discourage the proposed class plaintiffs
from proceeding forward with the class action, and is an improper use and abuse
of the declaratory judgment statute" and "an abuse of the judicial
system;"

 

(17) in order to
determine "whether interest payments are due to the plaintiffs or proposed
class members, [the Cameron County] court must necessarily determine rights and
obligations of the parties under the Texas Labor Code;"

 








(18) because of the
pleadings and evidence, and "the procedural docket in this case,"
including the "numerous prior appeals," "there exists the
existence of very special circumstances and the potential for an irreparable
miscarriage of justice to warrant the issuance of an anti-suit
injunction;"

 

(19) "Texas
Mutual does not dispute that its declaratory judgment filed in Travis County
would interfere with the judgments and decisions of [the Cameron County]
court."

 

The trial court's
order enjoined Texas Mutual and Howell from the prosecution of the Travis
County case.  Texas Mutual was enjoined
from seeking a declaration or determination of any issue currently pending in
that case or in the Cameron County case involving the proposed class plaintiffs
and from "filing or prosecuting any cause of action that involves the
interpretation of the Texas Labor Code with respect to issues of payment of
interest to health care providers under the Texas Workers' Compensation Act
involving the proposed class plaintiffs."[10]

II.  Issues on Appeal

Texas
Mutual brings three issues on appeal: (1) the trial court abused its discretion
in granting the temporary injunction where the applicant tendered no evidence
establishing its right thereto; (2) the trial court abused its discretion in
finding irreparable harm would occur and that no adequate legal remedy exists
absent the injunction; and (3) the trial court abused its discretion in
entering the order where the prerequisites for a temporary anti-suit injunction
were not satisfied.

III.  Standard of Review








Issuance
of an anti‑suit injunction rests within the sound discretion of the trial
court.  Gannon v. Payne, 706
S.W.2d 304, 305 (Tex. 1986); London Mkt. Insurers v. Am. Home Assurance Co.,
95 S.W.3d 702, 704 (Tex. App.BCorpus Christi 2003,
no pet.); Fina Oil & Chem. Co. v. Alonso, 941 S.W.2d 287, 290 (Tex.
App.BCorpus Christi 1996,
no writ) (citing Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993)). 








"A
trial court abuses its discretion when it acts arbitrarily and unreasonably,
without reference to guiding rules or principles, or misapplies the law to the
established facts of the case."  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241‑42 (Tex. 1985). 
The exercise of discretion is within the sole province of the trial
court, and an appellate court may not substitute its discretion for that of the
trial judge.  Johnson v. Fourth Ct.
App., 700 S.W.2d 916, 918 (Tex. 1985); City of San Antonio v. Rankin,
905 S.W.2d 427, 430 (Tex. App.BSan Antonio 1995, no writ).  Rather, an abuse of discretion occurs only
when the trial court reaches a decision that is "so arbitrary and
unreasonable as to amount to a clear and prejudicial error of law."  Johnson, 700 S.W.2d at 917.  A court of appeals will affirm the judgment
of the trial court if that judgment can be upheld on any reasonable theory
supported by the evidence.  Ex parte
E.E.H., 869 S.W.2d 496, 497-98 (Tex. App.BHouston
[1st Dist.] 1993, writ denied); Harris County Dist. Attorney's Office v.
Burns, 825 S.W.2d 198, 200 (Tex. App.BHouston [14th Dist.] 1992, writ denied).  We consider only the evidence most favorable
to the judgment, and if there is some evidence to support the judgment, we will
affirm.  State v. Knight, 813
S.W.2d 210, 211 (Tex. App.BHouston [14th Dist.] 1991, no writ).  We draw all legitimate inferences from the
evidence in the light most favorable to the trial court's ruling, and where
"some basis" exists on which the trial court could have properly held
as it did, there can be no abuse of discretion. 
See Munson v. Milton, 948 S.W.2d 813, 815 (Tex. App.BSan Antonio 1997, pet. denied); City of San
Antonio, 905 S.W.2d at 430.

IV.  Anti-Suit Injunction

The
purpose of any temporary injunction is to preserve the status quo of matters
that are the subject of pending litigation until a decision on the merits is
reached. Walling v. Metcalfe, 863 S.W.2d 56, 57 (Tex. 1993) (en
banc).  A function of injunctive relief
is to restrain motion and to enforce inaction. 
Boston v. Garrison, 256 S.W.2d 67, 70 (Tex. 1953).  








Texas
courts have the power, through anti-suit injunctions, to prevent persons from
proceeding with litigation filed in other state courts.  Golden Rule Ins. Co. v. Harper, 925
S.W.2d 649, 651 (Tex. 1996) (per curiam); Gannon, 706 S.W.2d at 305‑06;
London Mkt. Insurers, 95 S.W.3d at 706. 
However, this equitable power is to be exercised sparingly, and only in
very special circumstances.  Christensen
v. Integrity Ins. Co., 719 S.W.2d 161, 163, (Tex. 1986); London Mkt.
Insurers, 96 S.W.3d at 706.  The
party seeking the injunction has the burden to show that a clear equity demands
the injunction.  Christensen, 719
S.W.2d at 163; Harbor Perfusion, Inc. v. Floyd, 45 S.W.3d 713, 718 (Tex.
App.BCorpus Christi 2001,
no pet.).  The applicant must demonstrate
the potential for an irreparable miscarriage of justice in order to obtain the
anti‑suit injunction.  Golden
Rule, 925 S.W.2d at 651‑52; Am. Int'l Specialty Lines Ins. Co.
v.Triton, 52 S.W.3d 337, 341 (Tex. App.BDallas 2001, pet. dism'd w.o.j.); Forum Ins.
Co. v. Bristol‑Myers Squibb Co., 929 S.W.2d 114, 119 (Tex. App.BBeaumont 1996, writ
denied) (stating that clear equity favors all parties seeking completion and
finality to dispute in single proceeding without vexation of potentially
multiplicitous or harassing litigation).

An
anti‑suit injunction is appropriate in four instances:  (1) to address a threat to the court's
jurisdiction; (2) to prevent the evasion of important public policy; (3) to
prevent a multiplicity of suits; or (4) to protect a party from vexatious or
harassing litigation.  Golden Rule,
925 S.W.2d at 651; Gannon, 706 S.W.2d at 307; London Mkt. Insurers,
95 S.W.3d at 705.  The circumstances of
each situation must be carefully examined to determine whether the injunction
is necessary to prevent an irreparable miscarriage of justice.  Gannon, 706 S.W.2d at 307. 

Here,
the findings of fact set forth in the injunction reflect that the court was
aware of (1) the issues in both the Cameron County and Travis County actions,
(2) the procedural history of the Cameron County case, (3) the existence of
prior litigation between the parties, and (3) that the injunction issued
principally to protect the trial court's jurisdiction. 

V.  The Suits in Issue

A.  The Underlying Claims








Howell's
petition below brings a variety of causes of action against Texas Mutual,
including violations of the labor code and accompanying Commission orders and
rules, with the principal objective of recovering interest on delinquent
payments.[11]


B.  The Travis County Action

Texas Mutual's action
for declaratory judgment, filed in Travis County, seeks the following
declarations:

(1) no interest is
owed if payment was mailed before 60th day after received a complete bill; 

 

(2) when a carrier
pays an additional amount following receipt of a request for reconsideration,
interest is due only on the "additional amount" paid "only if
amount is mailed more than 21 days after request for reconsideration was
submitted;" 

 

(3) when a carrier
pays an additional amount upon reconsideration, when request therefor doesn't
comply with requirements, that no interest need be paid; 








 

(4) a carrier is not
required to pay interest under 133.304(q) and 134.803; 

 

(5) under 134.803, prior
to 7/15/00, a carrier is not required to pay interest unless a separate bill is
submitted for interest;

 

(6) section 42.15 of
the Commission rules does not make 410.208 of the code applicable to payments
from a carrier to health care providers, or alternatively section 42.15 of the
rules is invalid because it is inconsistent with 410.208 which doesn't apply to
these kinds of payments; or alternatively section 42.15 is applicable only if a
provider seeks to judicially enforce a TWCC medical review division order or
state office of administrative hearings order; 

 

(7) section 42.15 of
TWCC rules does not make 416.002 applicable to suit in which provider seeks
damages for failure to pay interest due under sections 133.304 and 134.803, or
that section 42.15 is invalid because it is inconsistent with Texas labor code
section 416.002 which doesn't apply to lawsuits in which providers seek damages
for failure to pay interest due under sections 133.304 and 134.803; and

 

(8) that sections
152.1 through 152.5 of the Commission rules and section 408.221 of the labor
code provide no basis for the award of attorneys' fees to a provider seeking
damages for failure to pay interest due.[12]

 








The Travis County
litigation avoids seeking an interpretation of the applicable statute, labor
code section 413.019.  Tex. Lab. Code Ann. ' 413.019 (Vernon
1996).  Texas Mutual argues that the
Commission is a necessary party to the litigation because it involves the
interpretation of Commission rules, and that venue is therefore mandatory in
Travis County, Texas, pursuant to government code section 2001.038.  Tex.
Gov't Code Ann. ' 2001.038 (Vernon
2000).

VI.  The Issue of Threat to
Jurisdiction

A.  Sufficiency of the Evidence

In
its first issue, Texas Mutual contends that Howell failed to tender any
evidence to the trial court to support the temporary anti-suit injunction.  In light of the instances in which an
anti-suit injunction is appropriate, we interpret Texas Mutual's contention to
be that insufficient evidence was before the trial court to enable it to
conclude there was a threat to its jurisdiction and, absent the injunction, a
potential for an irreparable miscarriage of justice.  See Golden Rule, 925 S.W.2d at
651‑52; Forum Ins. Co., 929 S.W.2d at 119.

No
temporary injunction may issue absent competent evidence in support of its
application, and that evidence must be tendered to the trial court at the
hearing on the temporary injunction according to the standard rules of
evidence.  Millwrights Local Union No.
2484 v. Rust Eng'g Co., 433 S.W.2d 683, 686‑87 (Tex. 1968) (citing Tex. R. Civ. P. 680); Bay Fin. Sav.
Bank, FSB v. Brown, 142 S.W.3d 586, 589-90 (Tex. App.BTexarkana 2004, no
pet.).








Howell
attached to its application for temporary restraining order and temporary
injunction a copy of the petition in the Travis County declaratory judgment
action.[13]  Howell also urged the trial court to take
judicial notice of the pleadings in the underlying case and in the Travis
County case in order to find that the sole reason for the Travis County case
was to "wrest jurisdiction" from the Cameron County court.  No witness testimony or other documentary
evidence was tendered by Howell.  

Texas
Mutual tendered the following in evidence at the injunction hearing:[14]
(1) the Travis County trial court's docket sheet; (2) the original petition for
declaratory judgment filed in Travis County; (3) the original answer of the
Commission to the Travis County suit; (4) two motions to transfer venue filed
in the Travis County suit by entities not party to this appeal (urging venue
was not mandatory in Travis County and was proper in Cameron and Jefferson
County, respectively), (4) an order of the bankruptcy court for the Southern
District of Texas lifting the automatic stay triggered by the bankruptcy filing
of Howell and First Rio Valley Medical, P.A., so that the underlying Cameron
County and Travis County actions might proceed,[15]
and (5) Texas Mutual's proposed amended petition for the Travis County action.  








At
the injunction hearing, Texas Mutual urged that the Travis County action
involved "interpretation of the [Commission's] rules that determine what
counts as a complete bill and what counts as making payment,"[16]
which would not interfere with the jurisdiction of the Cameron County suit. 

The
question before the trial court was whether there was a threat to its
jurisdiction and, absent an injunction, a potential for an irreparable
miscarriage of justice.  Viewed under the
proper deferential standard and measured against the trial court's findings, we
conclude that Howell tendered competent evidence to support its
application.  See Millwrights, 433
S.W.2d at 686-87.  

B.  The Court's Findings of Irreparable Harm and 

that an Anti-Suit
Injunction was Proper

 

In
its second issue, Texas Mutual argues the trial court abused its discretion in
finding that irreparable harm to Howell would occur, and that no adequate
alternative legal remedy existed, absent the injunction.  Howell urges that irreparable harm would result
from the trial court's loss of jurisdiction, particularly in light of the
extensive two years' litigation already undertaken by the parties, and that the
Travis County litigation would interfere with the class action proceedings.  We conclude that, in the context of an
anti-suit injunction, the question is whether the competing suit poses a threat
to the court's jurisdiction, such that, absent an anti-suit injunction, the
potential existed for irreparable harm and miscarriage of justice.  








Texas
Mutual's third issue is that the injunction was improper because Howell failed
to satisfy the prerequisites for an injunction. 
In the context of this suit, we interpret this complaint to be that the
case does not fit within one of the four narrow identified circumstances for an
anti-suit injunction, and that proceedings in Travis County will not threaten
the jurisdiction of the Cameron County trial court. 

The
analysis required under each of Texas Mutual's second and third issues is therefore
essentially the sameBwhether the anti-suit
injunction is appropriate and necessary in order to protect the jurisdiction of
the Cameron County court and to prevent an irreparable miscarriage of
justice.  This latter prong necessitates
that the injunction be justified by "clear equity" or
"compelling circumstances."  See
Golden Rule, 925 S.W.2d at 651.[17]  

C.  Challenges to Findings of
Fact

In
the context of its argument that the prerequisites for an anti-suit injunction
were not satisfied, Texas Mutual challenges several of the trial court's  findings.[18]


1.  Acquisition of Jurisdiction








Texas
Mutual argues there is no basis for the finding that "the Cameron County
trial court acquired jurisdiction over the parties and the subject matter of
the dispute prior to and to the exclusion of all other courts."  It is undisputed that the Cameron County
action was filed first and that it has jurisdiction over all those parties to
the exclusion of other courts for the issues raised in that suit.  The court in which suit is first filed
generally acquires dominant jurisdiction to the exclusion of other courts if
venue is proper in the County in which suit was first filed.  Wyatt v. Shaw Plumbing Co., 760 S.W.2d
245, 248 (Tex. 1988).  The underlying
record establishes that the venue matter was addressed and resolved, with venue
appropriate in Cameron County.

We
find there was sufficient evidence to support this finding, and the trial court
did not thereby abuse its discretion.  

2.  Dispute as to Interference
with Jurisdiction

Texas
Mutual argues there is no basis for the finding that "Texas Mutual does
not dispute that the declaratory judgment action filed in Travis County would
interfere with the jurisdiction of the Cameron County court."  The hearing record does include argument by
counsel that the Travis County declaratory judgment action would not interfere
with the Cameron County court's jurisdiction. 
Howell, by contrast, urges that Texas Mutual would not stipulate that it
would not seek to interfere with the Cameron County litigation, if the Travis
County litigation were to go forward. 
Texas Mutual presented argument, but no evidence on this issue.  We conclude that Texas Mutual did dispute
this finding.  Nonetheless, our
conclusion on this point is not dispositive to this appeal.  

3.  Multiplicity of Litigation
and Inconsistent Rulings and Interpretations








Texas
Mutual argues there is no "multiplicity of suits" given as a basis
for the injunction order.  There is only
one other suit in issueBthat in Travis
County.  The trial court's finding
reflects:

Multiple court (if the
Travis County litigation was permitted to proceed) litigation involving this
proposed class action would likely result in entanglements between the cases
pending, the potential for inconsistent rulings and interpretations,
inconsistent judgments, and inconsistent obligations of the parties and
therefore creates an essential need for this matter to be resolved in this
Court.  The Court further notes that this
case has already resulted in two mandamus appeals to the Thirteenth Court of
Appeals and petitions to the Texas Supreme Court (in which Texas Mutual was a
party) and would most probably result in additional appeals to the Third Court
of Appeals should the Travis County Case proceed.  The court finds that for this case to proceed
through two trial courts and courts of appeal is necessarily a waste of
judicial resources and against public policy.

 








This finding is not
dependent upon evidence of the existence of numerous other suits.  Indeed, the injunction did not issue to
prevent "vexatious or harassing" litigation.  Texas Mutual nevertheless contends that this
finding directly conflicts with the conclusion of the supreme court reached in Golden
Rule, 925 S.W.2d at 651-52.  We find
Golden Rule to be distinguishable.  Grounds for that injunction included that
the enjoined suit was vexatious and brought to harass.  Golden Rule had similarly sought first to
transfer venue and then proceeded to file a declaratory judgment action in another
stateBIllinois.  Id. at 651.  A Texas court's power to enjoin foreign
suits, in light of the strong deference to the principle of comity, simply was
not properly exercised where only one parallel proceeding existed; the
"very special circumstances" mandated did not exist.  Id. at 651-62 (citing Gannon,
706 S.W.2d at 307).  Comity, as in the
deference given to foreign jurisdictions, is not in issue here.  Given the arguments raised by Texas Mutual in
its efforts to change venue, and the declarations sought in Travis County, we
conclude the trial court did not abuse its discretion in finding that there
existed a likelihood of entanglements between the cases, the potential for
inconsistent rulings and interpretations, inconsistent judgments and obligations
of the parties, and a potential waste of judicial resources. 

4.  Public Policy 

Texas
Mutual challenges several of the trial court's findings that relate to public
policy.  In addition to addressing the
risk of multiple court litigation, the trial court concluded that payment of
interest statutorily due to health care providers under labor code section
413.019 "is the crux of the proposed class action," and that filing
and prosecuting a declaratory judgment action in a separate trial court "because
that party did not agree with the rulings of this court works against the
public policy of finality of a court's rulings."  See Tex.
Lab. Code Ann. ' 413.019 (Vernon
1996).  The trial court determined that
it was against public policy to pursue simultaneous litigation in two courts,
and that permitting two parallel cases "would most probably work an
irreparable miscarriage of justice" and would "potentially result in
conflicting rulings . . . on incidental as well as case determinative
issues."  The trial court's order
further reflects that:








[T]he declaratory
judgment sought by Texas Mutual in Travis County seeks attorneys' fees against
the purported class representatives for measures that are essentially defensive
in this case [Cameron County], if any. . . . [It] reflects an improper trial
strategy designed to deter and discourage the proposed class plaintiffs . . .
and is an improper use and abuse of the declaratory judgment statute . . .
[and] an abuse of the judicial system.[19]

 

The
trial court's order further states that the action for "declaratory relief
in Travis County . . . poses a threat to this court's jurisdiction to issue
rulings in this case seeking class action status," and that "very
special circumstances" existed that justified the temporary
injunction.   

Texas
Mutual opposes all these findings.  It
argues that the trial court's decision and order instituting the anti-suit
injunction did not fall under one of the four special instances where such an
injunction might be appropriate and, thus, constituted an abuse of discretion.








The
trial court reviewed and assessed the pleadings on file in both the Travis
County and the Cameron County actions. 
It considered the evidence before it relating to the history of
contentious litigation between the parties. 
It also took into account the prior interlocutory appeals in the
underlying cases and the arguments raised dealing with venue.  It considered the arguments of the parties
and determined that the focus of the Cameron County litigation involved statutory
interpretation of a section of the labor code regarding the payment of
interest.  It considered the declarations
sought in the Travis County suit, in light of the causes of action in the
Cameron County court, and determined that recasting the causes of action solely
in the context of rules designed to implement that statute (and which in effect
restate the same principles articulated in the statute) was nothing more than a
direct effort to divest the Cameron County court of jurisdiction.[20]  

We
remain mindful that we review the decision of the trial court for abuse of
discretion.  Abuse of discretion does not
lie where the conclusions reached by the trial court are not arbitrary or
unreasonable, without reference to guiding rules or principles, and do not
involve a misapplication of the law to the established facts of the case.  Downer,
701 S.W.2d at 241‑42.  Further, we may not
substitute our judgment for that of the trial court.  See Johnson, 700 S.W.2d at 918.  We find abuse of discretion only where the
trial court's decision is "so arbitrary and unreasonable as to amount to a
clear and prejudicial error of law." 
Id. at 917.  








We
are further mindful that Texas courts are vested with the authority to
interpret and apply legislative statutes. 
"The primary rule in statutory interpretation is that a court must
look to the intent of the legislature and must construe the statute so as to
give effect to that intent."  Union
Bankers Ins. Co. v. Shelton, 889 S.W.2d 278, 280 (Tex. 1994) (citing Monsanto
Co. v. Cornerstones Mun. Util. Dist., 865 S.W.2d 937, 939 (Tex. 1993); Knight
v. Int'l Harvester Credit Corp., 627 S.W.2d 382, 384 (Tex. 1982)).  When determining legislative intent, the
courts may look to the language of the statute, legislative history, the nature
and object to be obtained, and the consequences that would follow from
alternate constructions.  Id.
(citing Sharp v. House of Lloyd, Inc., 815 S.W.2d 245, 249 (Tex. 1991)
(considering the nature and object of the act and the consequences of alternate
constructions)); Irving Fireman's Relief & Ret. Fund v. Sears, 803
S.W.2d 747, 750 (Tex. App.BDallas 1990, no writ)
(considering the language of the statute and the legislative history).  There is no mandate that all matters
involving statutory construction may proceed only in Travis County.  

Here,
the trial court emphasized that the litigated dispute centered on the
interpretation and application of a statute set out in the labor code.  Although Texas Mutual emphasizes the need to
address Commission rules, the trial court could reasonably conclude that the
rules in issue derive directly from an unambiguous statute and address the same
substantive concerns.  








The
trial court did not base its conclusion upon any alleged excess of costs and
expenses, or a waste of judicial resources resulting from one parallel
suit.  See Gannon, 706 S.W.2d at
307-08; Golden Rule, 925 S.W.2d at 651. 
Rather, it concluded that "very special circumstances" existed
based upon the record before it, including (1) the two pending suits and the
claims asserted in each, (2) its conclusion that interpretation of the labor
code formed the center of the underlying plaintiff class's complaints, (3) the
history of the litigation between the parties, including the Cameron County
litigation and the multiple intervening appeals, (4) the fact that Texas Mutual
had previously attempted to transfer jurisdiction over the matter to the
federal court, and (5) the nature of the important public policies furthered by
the class action procedure.  See
Gannon, 70S.W.2d at 307-08; Golden Rule, 925 S.W.2d at 651.  We further note the trial court's specific
finding that interpretation in the manner proposed by Texas Mutual in the
declarations sought in the Travis County action would directly impact the
class's ability to recover under the existing statute and rules.  We find no abuse of discretion in the
conclusion that "very special circumstances" existed and that, in
light of the class action proceedings and the length of time the parties had
already been engaged in that litigation, the injunction was necessary to
prevent an irreparable miscarriage of justice.

5.  The Issue of Abatement as an
Adequate Remedy at Law








Having
found, therefore, that an anti-suit injunction was justified by special
circumstances that presented a real threat to the jurisdiction of the Cameron
County court, we must still determine whether the injunction is appropriate
where no prior request for abatement of the Travis County proceedings was
made.  Texas Mutual urges that Howell
should have pursued a plea in abatement because it constitutes an adequate
remedy at law.  Texas Mutual relies upon McCurdy
v. Gage, 69 S.W.2d 56, 59 (Tex. 1934), which provides that "it is the
duty of those engaged in the suit first filed to deal frankly with the court in
which the second action is filed and in good faith make a full disclosure to
the court with respect to what are the facts and issues involved in the case
first filed in the other court."  Id.
at 59.  However, Texas Mutual is also
a party engaged in the first filed suit, but does not address any duty it might
have to fully disclose issues involved in the Cameron County litigation to the
Travis County trial court.  We further
note that Howell has not appeared in the Travis County litigation.  Gage also provides: 

The rule is well
settled that where two actions involving the same subject‑matter are
brought in different courts having co‑ordinate jurisdiction, the court
which first acquires jurisdiction, its power being adequate to administer full
justice to the rights of all concerned, should retain such jurisdiction,
undisturbed by the interference of any other court, and dispose of the whole
controversy.

 








Id. (citing Cleveland
v. Ward, 285 S.W. 1063, 1069 (Tex. 1926); Way v. Coca Cola Bottling Co.,
29 S.W.2d 1067, 1070-71 (Tex. 1930); Tex. Trunk Ry. Co. v. Lewis, 16
S.W. 647, 648 (Tex 1891).  Texas Mutual
also cites to Cleveland , 285 S.W. at 1063, for the proposition
that the Texas supreme court "requires" that a plea in abatement
first be pursued before an injunction may be considered.  Cleveland involved a case in which mandamus
issued directing the trial court for the first-filed suit to proceed with
trial, along with an order vacating the judgment in the second suit.  Id. at 1068.  Adequate remedy at law was addressed in the
context of mandamus.  The court did not
issue an inflexible rule, but observed that "[t]he controlling question is
not, 'Has the party a remedy at law?' but 'Is that remedy fully commensurate
with the necessities and rights of the party under all the circumstances of the
particular case?'"  Id. at
1068-69.  The Cleveland court also
stated that "[s]ince jurisdiction attached upon filing the suit in Johnson
County, the rule is elementary that it could not be taken away or arrested by
the subsequent proceedings in another court."  Similarly, in Lancaster v. Lancaster,
291 S.W.2d 303 (Tex. 1956), the supreme court, while noting the preference for
abatement of a second suit, also observed that "[m]atters that will
constitute a defense of which complainant may avail himself in a suit pending
or threatened against him cannot be made the ground of an injunction to
restrain proceedings in such suit, unless he is prepared to allege and prove
special circumstances . . .  showing that
he may suffer irreparable injury if he is denied the preventive remedy."  Id. at 307 (emphasis added) (citing New
Amsterdam Cas. Co. v. Harrington, 297 S.W. 307, 309 (Tex. Civ. App.BFort Worth 1927, no
writ) ("An injunction will not be granted to a person who has a plain and
adequate remedy at law, which is as efficient as the remedy in
equity.")).  In this case, the trial
court assessed the situation before it, including the record and the argument
of counsel, and impliedly determined that any alternative remedy was not as
"efficient" or as appropriate as the remedy in equity.

We
are cognizant that the question before us does not involve a direct action by
the Travis County court to wrest jurisdiction from the Cameron County
court.  However, it does involve an
effort by Texas Mutual to bring core, case-determinative issues involved in the
class action to a different, later-selected forum.  It is also true that the Cameron County court
has full jurisdiction to consider the issues before it, including those
requiring statutory interpretation.  We
conclude that sufficient bases existed for the trial court to reach its
conclusions as to public policy and to find that the anti-suit injunction was
appropriate and necessary in order to preserve its jurisdiction, that
"compelling" or "very special circumstances" existed, and
that they justified the anti-suit injunction.  
See Golden Rule, 925 S.W.2d at 651.  








We
further conclude that the trial court did not act arbitrarily or unreasonably,
without reference to guiding rules or principles, or misapply the law to the
established facts.  Downer, 701
S.W.2d at 241-42.  The exercise of
discretion is within the sole province of the trial court and we may not
substitute our discretion for that of the trial judge.  Johnson, 700 S.W.2d at 918; Rankin,
905 S.W.3d at 430.  We are to affirm the
judgment of the trial court if it can be upheld on any reasonable theory
supported by the evidence.  Ex parte
E.E.H., 869 S.W.2d at 497-98; Burns, 825 S.W.2d at 200. 

We
conclude that the trial court did not abuse its discretion. 

VII.  Conclusion

          We
overrule Texas Mutual's issues on appeal. We affirm the order of the trial
court granting the temporary anti-suit injunction.  

 

ERRLINDA CASTILLO

Justice

 

Memorandum Opinion delivered and filed

this the 25th day of August, 2005.  

 

 

 

 

 











[1] The majority of these defendants
have either settled or have been non-suited. 





[2] Howell's brief states that Texas
Mutual is the only remaining defendant in the Cameron County suit that is
pursuing a separate case in a separate jurisdiction (Travis County).  





[3] The parties were involved in
earlier Travis County litigation, which was quite contentious.  Howell initiated that litigation to determine
the validity of a Commission rule requiring health care providers disputing
adequacy of payments by a workers' compensation insurance carrier to first
exhaust all administrative remedies; Texas Mutual counterclaimed against
Howell.  See Howell v. TWCC, 143
S.W.3d 416, 426 (Tex. App.BAustin 2004, pet. denied). 
One result of the suit was a permanent anti-suit injunction entered by the
Travis County court to halt Howell's prosecution of multiple suits in Cameron
County which were deemed to be vexatious and harassing, and a "disruption
of the administrative process for workers' compensation medical cost
control."  Howell's motion for rehearing
in its appeal from the Travis County suit was denied November 12, 2004.  Howell filed an application for a temporary
restraining order and temporary injunction in the underlying matter on November
18, 2004.  Texas Mutual urges that Howell
did not seek the temporary restraining order in the underlying matter until
after he lost the Travis County appeal. 





[4] We note that Texas Mutual did not
file the second Travis County suit until after the trial court's rulings
against it on the venue issue.  The
filing was nearly contemporaneous with the adverse rulings from the appellate
courts.  Texas Mutual argued that venue
in the underlying case was mandatory in Travis County because the causes of
action related to applicability of state agency rules and because the
Commission was a necessary party.  The
matter was appealed to this Court, and to the Supreme Court by mandamus.  Venue was affirmed in Cameron County without
comment. 





[5] In its brief, Texas Mutual
addresses a statement filed in the underlying proceedings by the
Commission.  In that statement, the
Commission supports the jurisdiction of the Travis County court to determine
validity or applicability of its agency rules and states that, because the
Commission is named as a party in the Travis County action, venue for that
matter is mandatory in Travis County.  See
Tex. Gov't Code Ann. ' 2001.038 (Vernon 2000).  The Commission notes it has not been served
or made any appearance in the underlying Cameron County suit and makes no
comments about the substance of that suit. 
The statement reflects a filing date of December 10, 2004, 1:25 p.m.,
the same date as the hearing on the anti-suit injunction, but the document was
not admitted in evidence at the hearing. 
Moreover, it is not dispositive of the issues in this appeal.





[6] This statute reads:

 

(a) Interest on an unpaid fee or
charge that is consistent with the fee guidelines accrues at the rate provided
by Section 401.023 beginning on the 60th day after the date the
health care provider submits the bill to an insurance carrier until the date
the bill is paid.

 

(b) Interest on a refund from a
health care provider accrues at the rate provided by Section 401.023 beginning
on the 60th day after the date the provider receives notice of
alleged overpayment from the insurance carrer until the date the refund is
paid.

 

Tex.
Lab. Code Ann. ' 413.019 (Vernon 1996).  





[7] Texas Mutual's petition for
declaratory judgment, filed in Travis County, reflects that litigation
comparable to that in Cameron County had been filed in Beaumont, Texas, by
other plaintiffs.  The petition
represents that the Beaumont suit was abated pending the outcome of the Cameron
County suit, and the trial court's findings so reflect.  A copy of the Beaumont petition is not before
us, and we are unable to determine how closely the causes of action set forth
therein may parallel either the Cameron County or the Travis County litigation.






[8] Tex.
Civ. Prac. & Rem. Code Ann. ' 37.001 et seq. (Vernon 1997). 





[9] Tex.
Gov't Code Ann. ' 2001.038 (Vernon 2000).  This provision of the government code
provides that (1) any action for validity or applicability of a rule may be
determined in an action for declaratory judgment if it is alleged that the rule
or its threatened application interferes with or impairs, or threatens to
interfere with or impair, a legal right or privilege of the plaintiff; (2) the
state agency must be made a party to the action; and (3) the action may be
brought only in a Travis County district court.  Id. 






[10] We note that the earlier
litigation in Travis County, which resulted in the anti-suit injunction, arose
subsequent to legislative changes in the Commission's administrative review
practice. 





[11] Suit is brought under the labor
code, section 413.019, as noted above, see Tex. Lab. Code Ann. ' 413.019 (Vernon 1996), as well as applicable Commission
rules.  Texas Mutual focuses on
interpretation of the rules, including rule 133.304(q),which provides: 

 

All payments of medical bills that
an insurance carrier makes on or after the 60th day after the date the
insurance carrier originally received the complete medical bill shall include
interest calculated in accordance with ' 134.803 of this title (relating to Calculating Interest
for Late Payment on Medical Bills and Refunds). 
Interest shall be paid from the 60th day after the date of receipt of
the complete medical bill to the date of payment, without order of the Commission.

 

28 T.A.C. ' 133.304(q) (2005).  Texas Mutual also claims that interpretation
of rule 134.803(a) is required; this rule provides:  

 

Insurance carriers shall pay
interest on medical bills paid on or after the 60th day after the insurance
carrier originally received the complete medical bill, in accordance with ' 133.304 of this title (relating to
Medical Payments and Denials).  Health
care providers shall pay interest on insurance carrier requests for refunds
paid later than the 60th day after the date the health care provider received
the request for refund, in accordance with ' 133.304 of this title (relating to Medical Payments and Denials).
The rate of interest will be set quarterly and will be calculated on a per
annum basis according to the Texas Labor Code, ' 401.023.

 

28 T.A.C. ' 134.803(a) (2005).

 





[12] Texas Mutual included in its
evidence a draft amended petition which it represented it would file in Travis
County if no injunction were entered by the Cameron County trial court.  This amended petition was represented as
narrowing the issues to be considered by the Travis County court, and requests only
five declarations similar to those articulated above.  It remained, at all times, a proposal.  





[13] Also attached was evidence that
the other two original plaintiffs in that action, Liberty Mutual Insurance
Company and Employers Insurance of Wausau, had nonsuited all their claims and
were no longer parties to that action.  





[14] Included in the clerk's record are
numerous documents under the heading "Court records and authorities
relevant to Plaintiffs' Motion for Temporary Injunction."  These include several documents relating to
the Travis County action and were apparently filed by Texas Mutual.  These include, among other things, the
Commission statement and numerous interlocutory appellate briefs and orders
relating to the venue issue in the Cameron County suit. 





[15] The bankruptcy court order permits
the Travis County and Cameron County actions to go forward to litigate all
issues, including any claim involving injunctive relief, except as to any
claims for monetary damages against Howell or First Rio Valley Medical,
P.A.  The exhibit also includes Texas
Mutual's motion for relief from the automatic stay.  





[16] We note that the narrow reason
articulated to the trial court by Texas Mutual's counsel as the basis for the
Travis County suit does not entirely comport with the declarations actually
requested in that suit.  





[17] See Golden Rule Ins. Co.
v. Harper, 925 S.W.2d 649, 651 (Tex. 1996) (per curiam); Gannon v. Payne,
706 S.W.2d 304, 307 (Tex. 1986); London Mkt. Insurers v. Am. Home
Assurance Co., 95 S.W.3d 702, 705 (Tex. App.BCorpus Christi 1998, no writ).  





[18] We note that unchallenged findings
of fact are binding on the court of appeals "unless the contrary is
established as a matter of law, or if there is no evidence to support the
finding."  Bay Fin. Sav. Bank v.
Brown, 142 S.W.3d 586, 590 (Tex. App.BTexarkana 2004, no pet.); McGalliard v. Kuhlmann,
722 S.W.2d 694, 696 (Tex. 1986); Reliance Ins. Co. v. Denton Cent. Appraisal
Dist., 999 S.W.2d 626, 629 (Tex. App.BFort Worth 1999, no pet.). 





[19] Class actions do play an important
role in our legal system.  See Ford
Motor Co. v. Sheldon, 22 S.W.3d 444, 452 (Tex. 2000); Gen. Motors Corp.
v. Bloyed, 916 S.W.2d 949, 952‑53 (Tex. 1996) (recognizing important
functions of class action procedure, including that it promotes efficiency,
protects defendants from inconsistent verdicts, protects rights of absent class
members, allows recovery by small claimants, and provides a mechanism for
enforcing laws through private attorney general suits).  





[20] We note that no party contends
that language of either the statute or the rules is ambiguous on its face.