**LONDON MARKET INSURERS,**
Appellant,

v.

**AMERICAN HOME ASSURANCE COMPANY, et al., Appellees.**

No. 13–02–231–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Jan. 9, 2003.

George G. Brin, Brin & Brin, for appellant.

Alexander J. Kovacs, Caron, Constants & Wilson, Rutherford, NJ, Alicia G. Curran, Burt Barr & Assoc., Dallas, Charles J. Stoia, D. Jeffrey Campbell, Robert J. Brennan, Porzio, Bromberg & Newman, Morristown, NJ, Cuyler Burk, Parsipanny, NJ, David Cobin, Moreira Law Firm, New York, NY, M.W. Meredith, Jr., Meredith, Donnell & Abernethy, Corpus Christi, Michael R. Gregg, Russ D. Roloff, Merlo, Danofsky & Brinkmeier, Chicago, IL, Michael S. Olsan, White & Williams, Philadelphia, PA, Mitchell C. Chaney, Rodriguez, Colvin & Chaney, Brownsville, Richard A. Crooker, Parsipanny, NJ, Wayne B. Mason, Sedgwick, Detert, Moran & Arnold, Dallas, for appellees.

Before Chief Justice VALDEZ and Justices RODRIGUEZ and DORSEY.[1]

## OPINION

Opinion by Justice RODRIGUEZ.

This is an interlocutory appeal of an anti-suit injunction entered in a declaratory judgment action involving an insurance coverage dispute. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(4) (Vernon Supp.2002). The district court in Nueces County, Texas, enjoined appellants, Certain Underwriters at Lloyd's, London, London Market Insurance Companies (London Market Insurers), from filing or pursuing any insurance coverage declaratory judgment action against appellees, Asarco, Incorporated (Asarco, Inc.), Lac D' Amiante du Quebec, Ltee (LAQ), and Capco Pipe Company, Inc. (CAPCO), in any other jurisdiction that would raise the same issues as those raised in the Texas action. By three issues, London Market Insurers contend the trial court abused its discretion in issuing the anti-suit injunction. We affirm.

## I. Background

On May 21, 2001, pursuant to section 37.001 of the Texas Civil Practice & Remedies Code, Asarco, Inc., filed a declaratory judgment action in Texas. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 37.001–.011 (Vernon 1997 & Supp.2003). Generally, Asarco, Inc., sought "a judicial determination of the rights and duties of [Asarco, Inc.], and each of the defendants with respect to an actual controversy arising out of the Policies issued to [Asarco, Inc.], by the Defendants." Specifically, Asarco, Inc., sought a declaratory judgment to determine insurance coverage for alleged injury arising from exposure to asbestos at its industrial facilities in Texas. Asarco, Inc., identified the underlying claims as premises claims.

On October 2, 2001, London Market Insurers filed suit in New York County, New York, against Asarco, Inc., LAQ and CAPCO. They sought a declaratory judgment to determine insurance coverage for products liability claims allegedly resulting from exposure to asbestos in products that LAQ and CAPCO introduced into the stream of commerce. They brought the action against Asarco, Inc., as the corpo-

---

1. Retired Justice J. Bonner Dorsey assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

rate parent and/or affiliate of LAQ and CAPCO.

On November 5, 2001, after the New York action was filed, Asarco, Inc., amended its petition to add plaintiffs, LAQ and CAPCO. By this amended petition, appellees sought a declaratory judgment to determine insurance coverage for alleged injuries caused by asserted exposure to asbestos fiber or asbestos-containing materials produced or sold by LAQ or CAPCO. Appellees referred to these underlying claims as products claims.

On March 15, 2002, appellees filed a motion for an anti-suit injunction asking the Texas court for an injunction precluding London Market Insurers from prosecuting the New York action and any other actions relative to interpretation of the insurance policies at issue. On April 18, 2002, the Nueces County District Court issued an anti-suit injunction against London Market Insurers. The trial court found that appellees "established that the New York Action present[ed] a threat to [its] jurisdiction and that issuance of an anti-suit injunction [was] necessary to prevent the evasion of important Texas public policy and to prevent a multiplicity of suits." It further found that appellees "established the existence of very special circumstances and the potential for an irreparable miscarriage of justice to warrant the issuance of an anti-suit injunction." The trial court enjoined London Market Insurers from "filing or pursuing any insurance coverage declaratory judgment action against [Asarco, Inc., LAQ, and CAPCO] in any other jurisdiction that would raise the same issues as those in this action, specifically including without limitation the action ... currently pending in ... the State of New York, County of New York."

## II. Standard of Review

■ Issuance of an anti-suit injunction rests within the sound discretion of the trial court. *Gannon v. Payne,* 706 S.W.2d 304, 305 (Tex.1986); *Davis v. Huey,* 571 S.W.2d 859, 861–62 (Tex.1978); *Am. Int'l Specialty Lines Ins. Co. v. Triton Energy Ltd.,* 52 S.W.3d 337, 339 (Tex. App.-Dallas 2001, pet. dism'd w.o.j.); *Fina Oil & Chem. Co. v. Alonso,* 941 S.W.2d 287, 290 (Tex.App.-Corpus Christi 1996, no writ) (citing *Walling v. Metcalfe,* 863 S.W.2d 56, 57 (Tex.1993)). "A trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to guiding rules or principles, or misapplies the law to the established facts of the case." *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). A reviewing court must consider "[w]hether the trial court's action is so arbitrary that it exceeds the bounds of reasonable discretion," but the appellate court may not substitute its judgment for that of the trial judge. *City of San Antonio v. Rankin,* 905 S.W.2d 427, 430 (Tex.App.-San Antonio 1995, no writ); *see Tex. Foundries v. Int'l Moulders & Foundry Workers' Union,* 151 Tex. 239, 244–45, 248 S.W.2d 460, 463 (1952). Drawing all legitimate inferences from the evidence in the light most favorable to the trial court's ruling, where "some basis" exists on which the trial court could have properly held as it did, there can be no abuse of discretion. *See Munson v. Milton,* 948 S.W.2d 813, 815 (Tex.App.-San Antonio 1997, pet. denied); *City of San Antonio,* 905 S.W.2d at 430.

## III. Analysis

### A. Anti-suit Injunction

■ An anti-suit injunction is appropriate in four instances: 1) to address a threat to the court's jurisdiction; 2) to prevent the evasion of important public policy; 3) to prevent a multiplicity of suits; or 4) to protect a party from vexatious or

harassing litigation. *Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649, 651 (Tex.1996) (per curiam); *Gannon*, 706 S.W.2d at 307.

■■■ Texas courts have the power to prevent persons from proceeding with litigation filed in other state courts. *Golden Rule*, 925 S.W.2d at 651; *Gannon*, 706 S.W.2d at 305–06; *Monsanto Co. v. Davis*, 25 S.W.3d 773, 778 (Tex.App.-Waco 2000, pet. denied); *Mfrs. Hanover Trust Co. v. Kingston Investors Corp.*, 819 S.W.2d 607, 612 (Tex.App.-Houston 1991, no writ). However, the principle of comity requires that courts exercise this equitable power sparingly, and only in very special circumstances. *Christensen v. Integrity Ins. Co.*, 719 S.W.2d 161, 163 (Tex.1986). Thus, the party seeking the injunction has the burden to show that a clear equity demands the injunction. *Id.; Harbor Perfusion, Inc. v. Floyd*, 45 S.W.3d 713, 718 (Tex. App.-Corpus Christi 2001, no pet.). Therefore, the applicant must also demonstrate the potential for an irreparable miscarriage of justice in order to obtain the anti-suit injunction. *Golden Rule*, 925 S.W.2d at 651–52 (mirror image proceedings not irreparable miscarriage of justice); *Triton*, 52 S.W.3d 337, 341 (appellate court affirmed trial court's issuance of anti-suit injunction based, in part, on service of suit clause where insurer agreed to abide by final determination of jurisdiction selected by policyholder); *Forum Ins. Co. v. Bristol–Myers Squibb Co.*, 929 S.W.2d 114, 119 (Tex.App.-Beaumont 1996, writ denied) (clear equity favors all parties seeking completion and finality to dispute in single proceeding without vexation of potentially multiplicitous or harassing litigation).

### B. Threat to Jurisdiction

By its second issue, London Market Insurers contend the trial court abused its discretion because the evidence does not support a finding that the proceeding in New York posed a threat to the court's jurisdiction in Texas. London Market Insurers argue that because the action before the Texas court was limited to premises liability coverage claims at the time the New York suit was filed, the New York action which involved only products liability coverage could not be regarded as a threat to the jurisdiction of the Texas court. They contend the New York action was the first-filed action relating to asbestos-products claims, and, thus, the evidence could not support a finding that the proceeding in New York posed a threat to jurisdiction in Texas.

■■■ Generally, where an action could be filed in either of two courts, the "first court acquiring jurisdiction will retain jurisdiction." *Armstrong v. Steppes Apts., Ltd.*, 57 S.W.3d 37, 49–50 (Tex.App.-Fort Worth 2001, pet. denied) *cert. denied,* —— U.S.——, 122 S.Ct. 2645, 153 L.Ed.2d 823, 70 U.S.L.W. 3789 (2002); *see Perry v. Del Rio*, 66 S.W.3d 239, 252–53 (Tex.2001); *Gurvich v. Tyree*, 694 S.W.2d 39, 42 (Tex. App.-Corpus Christi 1985, no writ). "[W]here jurisdiction is once lawfully and properly acquired, no subsequent fact or event in the particular case serves to defeat that jurisdiction." *Isbell v. Kenyon–Warner Dredging Co.*, 113 Tex. 528, 261 S.W. 762, 763 (1924); *see Haginas v. Malbis Memorial Found.*, 163 Tex. 274, 278, 354 S.W.2d 368, 371 (1962). An exception to this rule applies only when an amended petition presents a new cause of action that does not relate back to the original cause of action and amounts to the beginning of a new suit. *Isbell*, 113 Tex. at 531, 261 S.W. at 763.

■■■ London Market Insurers contend the new allegations in appellees' amended petition regarding asbestos-related products claims do not arise out of the same transaction or occurrence as the premises claims, and, therefore, cannot relate back

to the original petition because they are new causes of action.[2] *See Isbell*, 113 Tex. at 531, 261 S.W. at 763–64. However, in its original petition, Asarco, Inc., asked for a declaration of London Market Insurers' duty to indemnify and duty to defend claims of asbestos-related bodily injuries based on alleged exposure to asbestos at its facilities. Subsequent to London Market Insurers filing their action in New York on coverage issues related to products liability claims, Asarco, Inc., amended its petition to add a request for declaratory relief regarding London Market Insurers' duties under the same insurance policies, to indemnify and defend against asbestos products claims allegedly resulting from exposure to asbestos through products mined, milled, manufactured or sold by LAQ or CAPCO, subsidiaries of Asarco, Inc.

The first-filed declaratory judgment action filed in Texas sought to establish existing rights, status, or other legal relationships regarding asbestos claims under the insurance policies at issue. *See* TEX. CIV. PRAC. & REM.CODE § 37.002(b) (Vernon 1997) (purpose of declaratory judgment "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered"); *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex. 2000). This action sought declaratory judgment regarding this larger issue of coverage under the policies for asbestos-related bodily injury claims. The amended petition sought the same relief. The premises claims arose from alleged exposure to asbestos at Asarco, Inc.'s facilities, and the product claims arose from alleged

exposure to asbestos for which appellees were alleged to be legally responsible. In Texas, appellees sought a judicial determination of their rights to indemnification and defense under the policies at issue. In both the original petition and the amended petition, appellees asked the Texas court to determine liability provisions of the same insurance policies, liability provisions relating to alleged injuries resulting from asbestos exposure. The coverage at issue was for asbestos-related claims regardless of how they were pled, as asbestos products claims or asbestos premises claims. Thus, the Texas action was the first-filed action on coverage issues that relate to exposure to asbestos, and the claims in the amended petition were not new causes of action, but, rather, were claims that relate back to the original petition. *See Isbell*, 113 Tex. at 531, 261 S.W. at 763.

Therefore, we conclude the Texas court's jurisdiction was threatened by the New York action which also involved asbestosis insurance coverage issues under the same policies. *See id.* The threshold issue in both actions involved claims resulting from alleged exposure to asbestos and resultant injury. The generic basis of both the Texas declaratory judgment action and the New York action involved the question of insurance coverage. *Forum Ins.*, 929 S.W.2d at 119 (declaratory judgment actions in Texas and New York sought determination of insurance coverage for breast implant claims on same policies). On the basis that all coverage issues related to exposure to asbestos were brought by the original petition, and that the product claims were brought in by virtue of the relation-back doctrine, we

---

2. London Market Insurers also contend the amended petition cannot relate back to the date of the original petition because the amendment adds plaintiffs LAQ and CAPCO, parties that claim relief only from asbestos

products claims. London Market Insurers, however, provide no argument or authority in support of this argument, therefore, it is not before us in this appeal. *See* TEX.R.APP. P. 38.1(h).

conclude the Texas court obtained original jurisdiction over the entire coverage dispute.

London Market Insurers also argue that the relation back doctrine as expressed in *Isbell* does not apply in this case because the doctrine is derived from a statute and applies only to limitation issues. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.068 (Vernon 1997); *Isbell,* 113 Tex. at 531, 261 S.W. at 763. We agree that the relation back doctrine is normally used to save cases otherwise barred by a statute of limitations, and that the issue of limitations has not been brought in this appeal. However, the relation back doctrine has been applied at common law in different instances where there was a comparable or lesser degree of commonality than in this case between the cause of action in the amended petition and that in the original petition.[3] We conclude, under the facts of this case, that the relation back doctrine can be fairly applied in this instance.

Because we have concluded the evidence establishes there is a threat to the court's jurisdiction, an anti-suit injunction is appropriate under the guidelines of *Golden Rule. See Golden Rule,* 925 S.W.2d at 651(anti-suit injunction appropriate in four non-inclusive instances). The trial court's decision in this matter did not exceed the bounds of reasonable discretion. *See City of San Antonio,* 905 S.W.2d at 430. Its decision, as supported by the evidence presented and made in accordance with the principles established in *Golden Rule,* is proper for issuance of an anti-suit injunction. *See Golden Rule,* 925 S.W.2d at 651. Drawing all legitimate inferences from the evidence in the light most favorable to the trial court's ruling, we conclude there was "some basis" on which the trial court could have properly held as it did; thus, there can be no abuse of discretion. *See Munson,* 948 S.W.2d at 815. Accordingly, we overrule London Market Insurers' second issue.

Furthermore, having determined the trial court did not abuse its discretion in determining there was a jurisdictional threat, we need not address London Market Insurers remaining arguments that the trial court erred in concluding that: (1) the New York action evades Texas interests; and (2) a multiplicity of suits will be prevented. *See Golden Rule,* 925 S.W.2d at 651.

## C. Irreparable Miscarriage of Justice

By their third issue, London Market Insurers assert the trial court erred in finding the New York action may establish

---

**3.** *See, e.g., Hallaway v. Thompson,* 148 Tex. 471, 481–82, 226 S.W.2d 816, 822–23 (Tex. 1950) (amendment names same defendant, but changes capacity in which he is sued); *Conn v. Campbell,* 119 Tex. 82, 87–88, 24 S.W.2d 813, 815–16 (1930) (orig.proceeding) (where jurisdiction attaches, court has power to permit amendment of pleadings that relate back to the date originally filed insofar as any jurisdictional question is concerned); *Cleveland v. Ward,* 116 Tex. 1, 17–18, 285 S.W. 1063, 1070 (1926) (orig.proceeding) (same); *Isbell v. Kenyon–Warner Dredging Co.,* 113 Tex. 528, 261 S.W. 762, 763 (1924) (jurisdiction, once lawfully and properly acquired, not destroyed by amended petition that increased amount in controversy); Chien v. Chen, 759 S.W.2d 484, 487 & 493 (Tex.App.-Austin 1988, no writ) (applied relation back doctrine to amendment adding partners as plaintiffs); *Ferguson Seed Farms, Inc., v. Ferguson,* 52 S.W.2d 354, 356–57 (Tex.Civ.App.-Eastland 1932, no writ) (citing several cases for proposition that pleading based on "same contract" as original pleading relates back to original pleading); *Threadgill v. Fed. Land Bank of Houston,* 26 S.W.2d 345, 347–48 (Tex.Civ. App.-Fort Worth 1930, writ dism'd) (when defendant's defense increased amount in controversy, court concluded jurisdiction was not destroyed because a court, having once acquired jurisdiction for one purpose, has right to have all properly involved questions litigated in that suit).

potential for an irreparable miscarriage of justice. They first claim the trial court erred because the New York action was the first-filed suit, and the Texas amendment cannot relate back to the original petition. Based on our analysis above, however, we find this argument to be unpersuasive.

■ London Market Insurers next contend that New York is the more appropriate forum for contract disputes with respect to the products claims at issue because of: (1) the number of contacts in New York, which are not replicated in Texas; (2) the "strong likelihood" that the court will apply New York law to the coverage issues; and (3) the long and extensive history that the New York courts have in addressing these policies, claims, and parties. London Market Insurers rely on *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507–08, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) (superceded by 23 U.S.C.A. § 1404(a) (West 1993)). *Gulf Oil,* however, involved a federal tort action wherein the United States Supreme Court considered multiple and varied factors in determining a forum non conveniens venue issue. *See id.* The factors included consideration of the principal location of the insured risk, the availability of sources of proof, the state's nexus with subject matter of action, and the substantive law to be applied. *See id.; see also* TEX. CIV. PRAC. & REM.CODE ANN. § 71.051(b) (Vernon Supp.2003) (factors adopted from *Gulf Oil* to be considered in applying forum non conveniens doctrine in Texas). Here we are determining the appropriateness of an anti-suit injunction. We have no precise guidelines. Therefore, "[t]he circumstances of each situation must be carefully examined to determine whether the injunction is required to prevent an irreparable miscarriage of justice." *Forum Ins.*, 929 S.W.2d at 119 (quoting *Gannon,* 706 S.W.2d at 307).

■ We have already concluded that the injunction appropriately addressed one of the clearly defined instances set forth in *Golden Rule,* that the New York action constituted a threat to the Texas court's jurisdiction. *See Golden Rule,* 925 S.W.2d at 651. The second touchstone of consideration in anti-suit injunctive relief is whether the injunction was necessary "to prevent an irreparable miscarriage of justice." *Forum Ins.,* 929 S.W.2d at 119 (citing *Golden Rule,* 925 S.W.2d at 652).

> In evaluating the potential for "irreparable miscarriage of justice," the circumstances justifying entry of anti-suit injunction must exceed mere "special circumstances." To justify entry of anti-suit injunction, there must be "very special" and "compelling circumstances." (citations omitted). We thus conclude that in order for the entry of anti-suit injunction to stand, those circumstances considered ... in issuing the present anti-suit injunction must have been of such nature and effect that without such relief an "irreparable miscarriage of justice" would occur.

*Id.*

■ The trial court, in this case, found that appellees "established the existence of very special circumstances and the potential for an irreparable miscarriage of justice to warrant the issuance of an anti-suit injunction." The evidence establishes, and London Market Insurers do not challenge, the existence of a service of suit clause in each policy. By way of this service of suit provision, London Market Insurers agreed to submit to the jurisdiction of any court of competent jurisdiction within the United States, to comply with all requirements necessary to give the court jurisdiction, and to abide by the final decision of the court or of any appellate court in the event of an appeal. Thus, pursuant to the terms of the clause, London Market Insurers

agreed to submit to the jurisdiction selected by appellees and agreed to be bound by the final decision of the trial court or of this Court. *See Triton,* 52 S.W.3d at 341.

Because London Market Insurers filed suit in New York after appellees instituted suit on coverage issues in Texas, the record supports the trial court's determination that very special circumstances did exist, that London Market Insurers violated the service of suit clause when they filed the declaratory judgment insurance coverage action in New York after appellees did so in Texas. *See id.* The trial court found that appellees "established the existence of very special circumstances and the potential for an irreparable miscarriage of justice to warrant the issuance of an anti-suit injunction." The trial judge framed his decision by referencing the principles for anti-suit injunctions set forth by the Texas Supreme Court in *Golden Rule. See id.* (citing *Golden Rule,* 925 S.W.2d at 651). We cannot conclude the trial court abused its discretion in granting the anti-suit injunction against London Market Insurers. The third issue is overruled.

Based on our analysis of London Market Insurers' second and third issues, we also overrule their first issue which generally asserts the trial court abused its discretion in issuing the anti-suit injunction.

## IV. Conclusion

Accordingly, the trial court's issuance of the anti-suit injunction is affirmed.

Dissenting Opinion by Retired Justice J. BONNER DORSEY.

J. BONNER DORSEY, Justice (Assigned), dissenting.

The Texas Supreme Court has written three times since 1986 on the propriety of Texas judges enjoining actions in courts in jurisdictions other than Texas[1]. In all of the cases, jurisdiction first attached in the Texas court and the same matters were the subject of litigation in both the Texas and foreign court. In each of the three cases, after considering the demand of comity, the supreme court has concluded that the trial judge abused his discretion and the injunction should not have issued. The rule that is synthesized from these cases is that only in extraordinary cases would an injunction be proper. Because I do not find that such special circumstances exist in the instant case, I believe the trial court abused its discretion and should not have issued the injunction. I would reverse.

The latest instruction from the supreme court is in *Golden Rule Ins. Co. v. Harper,* 925 S.W.2d 649 (Tex. 1996) per curiam. In it Mr. Harper sued his medical insurance carrier, Golden Rule Insurance Co., in Harris County, Texas, for benefits it declined to pay for Mrs. Harper's treatments. Golden Rule filed a declaratory judgment action in Illinois, where harper resides and the policy was issued to determine if the treatment Mrs. Harper sough was experimental, and thus excluded from coverage. Harper then sought and received a temporary injunction against Golden Rule from proceeding in the Illinois action. The court of appeals affirmed and found that the Illinois action only consisted of defensive issues and was the "mirror image" of the Texas suit. The court of appeals reasoned that the duplica-

---

1. *Gannon v. Payne,* 706 S.W.2d 304 (Tex. 1986) (J. Kilgarlin writing for a unanimous court); *Christensen v. Integrity Ins. Co.,* 719 S.W.2d 161 (Tex. 1986) (C.J. Hill writing for a unanimous court); and *Golden Rule Ins. Co. v. Harper,* 925 S.W.2d 649 (Tex. 1996) (per curiam).

tion of effort in the two courts would create havoc with resulting waste of judicial resources weighed heavily in favor of the anti-suit injunction.

The supreme court disagreed, and held that such reasoning is no supported by its decisions. It said, "In *Gannon*, we did not accept the argument that pursuing a declaratory judgment action in a Canadian court on issues that could have been brought as defenses in the first filed Texas proceeding was a waste of resources, let alone that such additional expense would justify an injunction against the Canadian proceedings. *Gannon*, 706 S.W.2d at 307-08. Nor did we agree that the risk of inconsistent judgments was a significant one, ..." *Golden Rule*, 925 S.W.2d at 651.

The court additionally refused to accept the distinction made by the court of appeals between a "mirror image" proceeding and an "ordinary single parallel" proceeding, where the court of appeals held that although an ordinary single parallel proceeding could not be enjoined a "mirror image" proceeding could be.

> We reject the implicit distinction of the court below between single parallel proceeding and mirror image proceedings, and we disapprove the language of *Admiral Ins. [Co. v. Atchison, Topeka & Sante Fe Ry*, 848 S.W.2d 251, 256 (Tex. App.—Fort Worth 1993, writ denied)], to the extent it offers such a rationale. This approach fails to give adequate weight to the principle of comity and threatens to allow the exception to swallow the rule. As we have said before, "if the principle of comity is to have any application, a single parallel proceeding ... cannot justify issuing an anti-suit

injunction." *Gannon*, 706 S.W.2d at 307. **Such a suit must be allowed to proceed absent some other circumstances which render an injunction necessary to "prevent an irreparable miscarriage of justice." *Id.* Merely because the suits present identical issues does not make their proceeding an "irreparable miscarriage of justice."**

*Golden Rule*, 925 S.W.2d at 651-52 (emphasis added).

Turning to the instant case, although there is some question whether the actions in Texas and New York are so similar that the foreign suit threatens the local court's jurisdiction, I will assume it to be so. The Texas court acquired jurisdiction first and thus has dominant jurisdiction in the matter. The question then is what are the special circumstances that require injunction to avoid an irreparable miscarriage of justice. The trial judge so concluded so in his order, but we must examine the evidence and circumstances to determine if his decision was correct.

The majority finds special circumstances from a breach of a policy provision by London Market Insurers, by which they agreed to submit to the jurisdiction of any court of competent jurisdiction within the United States. By this agreement, London Market Insurers agreed to submit to a jurisdiction selected by appellees and to be bound by the judgment.[2]

However, I do not find that to be such a special circumstance so as to constitute an irreparable miscarriage of justice by the breach of the provision. I believe such a breach, if indeed it is, could be remedied by a later action for damages.

---

**2.** Although the recent Dallas case of *Amer. Int'l Specialty Lines Ins. Co. v. Triton Energy, Ltd.*, 52 S.W.3d 337 (Tex. App.—Dallas 2001, pet dism'd w.o.j.), mentioned the existence of such a "service of suit" provision as a partial justification for the anti suit injunction, I disagree with the conclusion. The case was not reviewed by the supreme court because it lacked jurisdiction.

Accordingly, I would reverse the trial court and dissolve the injunction. Because the majority does not, I respectfully dissent.