NUMBER 13-03-00139-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI B EDINBURG

 

TOMMY WAYNE FLEMING,                                                             Appellant,

 

                                                             v.

 

PATRICIO AHUMADA, JR. AND EDWIN L.
McANINCH,               Appellees.

 

   On appeal from the 404th District Court of Cameron County,
Texas.

 

                               O P I N I O N

 

                Before Justices Hinojosa, Yañez,
and Castillo

                                      Opinion
by Justice Hinojosa

 

This appeal is from the trial court=s judgment granting appellees, Patricio
Ahumada, Jr. and Edwin L. McAninch, declaratory relief and an anti-suit
injunction.  In eight issues, appellant
,Tommy Wayne Fleming, contends the trial court erred in granting the
judgment.  We reverse and render in part
and modify and affirm in part.








 

                                                             A.  Background

In 1997, Ahumada, by and through his counsel
McAninch, sued Fleming in the 404th District Court of Cameron County, alleging
legal malpractice, fraud, breach of fiduciary duty, and violations of the Texas
Deceptive Trade Practices B Consumer Protection Act (Athe malpractice suit@), stemming from Fleming=s alleged actions in an underlying
bankruptcy suit.  In July 2002, Ahumada
and Fleming reached a settlement agreement in the malpractice suit, which they
signed on July 10th and 11th, respectively. 
The settlement agreement contained a non-disclosure provision which
stated:

[T]he existence and terms of this agreement
specifically including, but not limited to, the amount of consideration agreed
to and the underlying facts and allegations of this suit, to the maximum extent
permitted by law, shall remain confidential and shall not be disclosed to
anyone.  

 

The provision further stated that neither
Ahumada nor any of his representatives would Arelease or otherwise communicate any of the
terms or conditions of this settlement agreement or the amount paid,@ or Adivulge the circumstances surrounding the
alleged improper conduct made the subject of [Ahumada=s] claims@ against Fleming.








On July 25, 2002, Fleming filed suit against
Ahumada and McAninch in the 288th District Court of Bexar County, seeking
injunctive relief and damages.  In the
Bexar County suit, Fleming alleged that certain pleadings filed by McAninch on
behalf of Ahumada in a lawsuit styled Texas Gulf Trawling Co., Inc., et al.
v. RCA Trawlers & Supply, Inc., et al., Cause No. 94-09-4693-D, then
pending in the 103rd District Court of Cameron County, violated the
non-disclosure provision of the settlement agreement.  The Bexar County court issued a temporary
restraining order against Ahumada and McAninch and set a hearing on the
temporary injunction request for August 9, 2002.

In response, on August 2, 2002, Ahumada,
with McAninch as an intervenor, obtained a temporary restraining order from the
404th District Court of Cameron County (ACameron County@), enjoining Fleming from pursuing any
matter related to the non-disclosure claims asserted in Bexar County, including
attending the temporary injunction hearing. 
In addition, on August 8, 2002, Ahumada and McAninch filed in the Bexar
County suit (1) a motion to transfer venue to Cameron County, (2) a plea to
abate the Bexar County suit, and (3) an answer asserting that (a) the venue
selection clause in the settlement agreement was unenforceable and (b) the
confidentiality agreement improperly interfered with Ahumada=s claims in the Texas Gulf Trawling
case.  On August 14, 2002, Ahumada and
McAninch further petitioned the Cameron County court for declaratory relief
that the confidentiality provision of the settlement agreement did not preclude
Ahumada or McAninch from prosecuting the Texas Gulf Trawling case.   

Similarly, on August 13, 2002, Fleming filed
in Cameron County a plea to abate the Cameron County suit, urging that Bexar
County had dominant jurisdiction over the non-disclosure claims, and a motion
to transfer venue to Bexar County.   

On August 16, 2002, the Cameron County court
granted Ahumada and McAninch a temporary injunction, enjoining Fleming from
seeking any relief arising from the settlement agreement in any county other
than Cameron County, and from pursuing a claim for violation of the
confidentiality provision of the settlement agreement against Ahumada or
McAninch for any conduct or disclosures made in connection with the defense or
prosecution of the Texas Gulf Trawling case. 
In addition, the Cameron County court denied Fleming=s plea to abate and set the case for trial.








Appellees= requests for declaratory relief and
permanent injunction were tried to the Cameron County court, without a jury, on
January 16, 2003.  The trial court
determined that it had jurisdiction over the action and granted declaratory and
injunctive relief in favor of appellees. 
This appeal ensued.

                                                              B.  Jurisdiction

In his second and third issues, Fleming
complains the trial court erred in concluding that it had jurisdiction to
resolve the dispute over the settlement agreement.  Fleming asserts that Bexar County had
dominant jurisdiction over his breach of contract claims and, therefore, the
trial court erred in denying his plea to abate.

The Texas Supreme Court has specifically
instructed that A[w]here [a] settlement dispute arises while
the trial court has jurisdiction over the underlying action, a claim to enforce
the settlement agreement should, if possible, be asserted in that court under
the original cause number.@  Mantas
v. Fifth Court of Appeals, 925 S.W.2d 656, 658 (Tex. 1996); see also
Batjet, Inc. v. Jackson, 161 S.W.3d 242, 245 (Tex. App.BTexarkana 2005, no pet.) (noting that the
parties properly asserted their motion for summary judgment to enforce the
settlement agreement in the trial court under the original cause number); Citgo
Ref. & Mktg. v. Garza, 94 S.W.3d 322, 330 (Tex. App.BCorpus Christi 2002, no pet.) (noting that
because settlement dispute arose while trial court still had jurisdiction,
parties properly asserted claims to enforce settlement agreement under original
cause number).  Enforcement of a settlement
agreement as a separate cause of action is only necessary where the trial court
no longer has jurisdiction over the underlying action.  See Mantas, 925 S.W.2d at
658-59. 








Fleming filed his suit in Bexar County
approximately two weeks after the parties signed the settlement agreement.  On that date, however, the malpractice suit
was still pending in the 404th District Court of Cameron County because the
court had not yet signed an order of dismissal. 
Accordingly, the Cameron County court still had jurisdiction over the
matter.  Following Mantas, we
conclude the parties were required to assert any claims regarding the
settlement agreement in the 404th District Court of Cameron County under the
original cause number.

Furthermore, we conclude that Fleming=s arguments of Adominant jurisdiction@ are inapplicable in this case.  See Curtis v. Gibbs, 511 S.W.2d 263,
267 (Tex. 1974) (noting that once a court has acquired dominant jurisdiction
under the Afirst-filed@ rule, the second court is required to grant
a properly requested plea in abatement). 
The concept of dominant jurisdiction applies only in circumstances where
a suit would be proper in more than one county. 
Gonzalez v. Reliant Energy, Inc., 159 S.W.3d 615, 622 (Tex.
2005).  Under those circumstances, Athe court in which suit is first filed
acquires dominant jurisdiction to the exclusion of other courts@ if venue was proper in that county.  Wyatt v. Shaw Plumbing Co., 760 S.W.2d
245, 248 (Tex. 1988) (citing Curtis, 511 S.W.2d at 267; V.D. Anderson
Co. v. Young, 101 S.W.2d 798, 800 (Tex. 1937); Cleveland v. Ward,
285 S.W. 1063, 1070 (Tex. 1926)); see also Gonzalez, 159 S.W.3d at
622.  However, we conclude later in this
opinion that venue is not proper in Bexar County.  See discussion infra Part
C.  Because venue is proper only in
Cameron County, the Afirst-filed@ rule is inapplicable and the trial court
did not err in denying appellant=s plea to abate.

Fleming=s second and third issues are overruled.

 








                                                                    C.  Venue

In his eighth issue, Fleming contends the
trial court erred in denying his motion to transfer venue to Bexar County.  Fleming asserts that (1) venue was mandatory
in Bexar County, and (2) the venue provision contained in the settlement
agreement should be enforced as written consent to transfer venue. 

In reviewing the venue determination of a
trial court, we must conduct an independent review of the entire record.  Tex.
Civ. Prac. & Rem. Code Ann. ' 15.064(b) (Vernon 2002); Ruiz v. Conoco,
Inc., 868 S.W.2d 752, 758 (Tex. 1993); Colonial County Mut. Ins. Co. v.
Valdez, 30 S.W.3d 514, 527 (Tex. App.BCorpus Christi 2000, pet. denied).  We conduct this review like any other review
of a trial court's factual findings and legal rulings, except that we need not
review the evidence for factual sufficiency.  Ruiz, 868 S.W.2d at 758; Valdez, 30
S.W.3d at 527.  If there is any probative
evidence to support the trial court's determination, even if the preponderance
of the evidence is to the contrary, we must uphold the trial court's venue
determination.  Ruiz, 868 S.W.2d
at 758; Valdez, 30 S.W.3d at 527. 
Although we view the record in the light most favorable to the trial
court's ruling, we do not defer to the trial court's application of the law to
the facts of the case.  See Ruiz,
868 S.W.2d at 758.  

                                                            1.  Mandatory Venue

Fleming asserts that venue was mandatory in
Bexar County under section 15.012 of the civil practice and remedies code.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 15.012 (Vernon 2002) (AActions to stay proceedings in a suit shall
be brought in the county in which the suit is pending.@).








By mandating that when an action has been
previously filed, a party desiring to enjoin that action must proceed in the
county in which the action is pending, section 15.012 prohibits parties from
collaterally attacking proceedings properly pending in a foreign county.  See id.  Indeed, where we have determined that
transfer of a proceeding was mandatory under section 15.012, we held the
proceeding to be enjoined was filed in a court of proper venue for that
action.  See O=Quinn v. Hall, 77 S.W.3d 452, 454 (Tex. App.BCorpus Christi 2002, orig. proceeding).  Our decision in O=Quinn explained that a party could not maintain venue of a suit to enjoin a
proceeding in a foreign county by filing the request for injunction along with
other claims for relief.  Id. at
457.  In the circumstance where a party
files his collateral request for injunction along with other claims, section
15.012 mandates venue of all the claims in the county of the proceeding sought
to be enjoined.  Id.  Fleming argues that because appellees
requested injunctive relief against his action filed in Bexar County, all of
appellees= claims had to be transferred to Bexar
County.  








However, the circumstances created by
Fleming differ significantly from those where section 15.012 normally operates
to control venue B Fleming, desiring to transfer his claims
from Cameron County where venue was proper, to Bexar County where venue was not
proper, filed a subsequent suit in the improper venue and attempted to force
his opponents to either pursue both actions or transfer the entire action to
the county of improper venue under section 15.012.  Under the venue statutes, Cameron County is
the only proper venue for Fleming=s claims. 
See Tex. Civ. Prac. &
Rem. Code Ann. '' 15.002, 15.011 - 15.039 (Vernon 2002).  We will not endorse an interpretation of
section 15.012 that creates a loophole for parties to circumvent the venue
statutes in order to litigate their claims any place they choose.  Furthermore, section 15.012 does not prevent
a trial court from protecting its jurisdiction against such an attempted
infringement.  See generally Golden
Rule Ins. Co. v. Harper, 925 S.W.2d 649, 651 (Tex. 1996) (per curiam)
(discussing anti-suit injunctions); see also discussion infra Part
D.  Accordingly, we conclude section
15.012 is inapplicable in this circumstance.








Because the supreme court=s reasoning in Mantas required
Fleming to bring his claims regarding the settlement agreement in the trial
court under the original cause number, we conclude that Fleming=s claims are properly considered permissive
counterclaims to the original action.  Mantas,
925 S.W.2d at 658; see also Tex.
R. Civ. P. 97(b) (AA pleading may state as a counterclaim any
claim against an opposing party whether or not arising out of the transaction
or occurrence that is the subject matter of the opposing party=s claim.@); Black=s Law Dictionary 353 (7th ed. 1999) (defining counterclaim
as Aa claim for relief asserted against an
opposing party after an original claim has been made@).  As
permissive counterclaims, venue of the settlement dispute is properly
controlled by venue of the underlying action under section 15.062 of the civil
practice and remedies code.  See Tex. Civ. Prac. & Rem. Code Ann. ' 15.062 (Vernon 2002) (AVenue of the main action shall establish venue
of a counterclaim, cross claim, or third party claim properly joined under the
Texas Rules of Civil Procedure or any applicable statute.@). 
Venue of the underlying action was determined pursuant to the general venue
statute, under which venue is proper (1) in the county in which all or a
substantial part of the events or omissions giving rise to the claim occurred,
(2) in the county of the defendant's residence at the time the cause of action
accrued if the defendant is a natural person, (3) in the county of the
defendant's principal office if the defendant is not a natural person, or (4)
in the county in which the plaintiff resided when the cause of action
accrued.  Tex. Civ. Prac. & Rem. Code Ann. ' 15.002(a) (Vernon 2002); Madera Prod.
Co. v. Atlantic Richfield Co., 107 S.W.3d 652, 657 (Tex. App.BTexarkana 2003, pet. denied).  The original pleadings established that the
cause of action arose in Cameron County, and all parties are residents of
Cameron County.  Therefore, we conclude
that venue was proper in Cameron County for both the underlying action and the
settlement dispute.

                                             2.  Written Consent to Transfer Venue

Fleming further argues that the trial court
erred by not transferring the settlement dispute to Bexar County in accordance
with the agreed venue provision contained in the settlement agreement.  The agreed venue provision states as follows:

This confidentiality clause is expressly
performable and enforceable at the sole discretion of [Fleming] in a court of
competent jurisdiction in either Brownsville, Cameron County, Texas or San
Antonio, Bexar County, Texas. [Ahumada] specifically waives any right to transfer
venue in the event litigation ensues and agrees to venue in Bexar County or
Cameron County.

 








In general, Athe fixing of venue by contract, except in
such instances as [specifically permitted by statute], is invalid and cannot be
the subject of private contract.@  Fid.
Union Life Ins. Co. v. Evans, 477 S.W.2d 535, 537 (Tex. 1972) (finding
invalid venue clause which Ain advance of trial, places the power in one
of the contracting parties to select either the county authorized by the venue
statutes or a county which violates that scheme@); see also Int=l Travelers' Ass'n v. Branum, 212 S.W. 630, 632 (Tex. 1919).  Therefore, as a contractual provision
attempting to fix venue in Bexar County, the agreed venue provision is
invalid.  

However, Fleming argues that because the
agreed venue provision is contained in a settlement agreement, it constitutes
written consent from Ahumada to transfer venue in accordance with section
15.063(3) of the civil practice and remedies code and rule 255 of rules of
civil procedure.  See Tex. Civ. Prac. & Rem. Code Ann. ' 15.063(3) (Vernon 2002); Tex. R. Civ. P. 255.  Section 15.063 provides that a trial court Aon motion filed and served concurrently with
or before the filing of the answer, shall transfer an action to another county
of proper venue if . . . written consent of the parties to transfer to
any other county is filed at any time.@  Id.
' 15.063(3) (emphasis added); see also Tex. R. Civ. P. 255 (AUpon the written consent of the parties
filed with the papers of the cause, the court, by an order entered on the
minutes, may transfer the same for trial to the court of any other county
having jurisdiction of the subject matter of such suit.@). 
However, Bexar County is not a county of proper venue under any
mandatory or permissive venue provision. 
See Tex. Civ. Prac. &
Rem. Code Ann. '' 15.011 - 15.039 (Vernon 2002).  In addition, none of the parties reside in
Bexar County and none of the events giving rise to the cause of action occurred
in Bexar County.  See Tex. Civ. Prac. & Rem. Code Ann. ' 15.002(a) (Vernon 2002).  Thus, assuming, without deciding, that the
agreed venue provision could possibly constitute written consent from Ahumada
to transfer venue, we conclude that Bexar County is not an eligible destination
for such a transfer.  Fleming=s eighth issue is overruled.

                                                      D.  Anti-Suit
Injunction

In his fourth, fifth, and first issues,
Fleming challenges the trial court=s issuance of an anti-suit injunction.  








The decision to issue an anti‑suit
injunction rests within the sound discretion of the trial court.  London Mkt. Ins. v. Am. Home Assurance Co.,
95 S.W.3d 702, 705 (Tex. App.BCorpus Christi 2003, no pet.).  In reviewing the trial court's decision, we
are to draw inferences from the evidence in the manner most favorable to the
trial court's ruling.  See id.  "A trial court abuses its discretion
when it acts arbitrarily and unreasonably, without reference to guiding rules
or principles, or misapplies the law to the established facts of the
case."  Id. (quoting Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241‑42 (Tex.
1985)).  A trial court is within its
power to base a decision on conflicting evidence;  however, that evidence must reasonably
support the trial court's decision.  Harbor
Perfusion, Inc. v. Floyd, 45 S.W.3d 713, 717 (Tex. App.BCorpus Christi 2001, no pet.). 

                                                        1.  Grounds for Injunction

In his fourth issue, Fleming asserts the
trial court erred in concluding it had grounds to issue an anti-suit
injunction. 








It is firmly established that ATexas state courts have the power to
restrain persons from proceeding with suits filed in other courts of this
state.@  Gannon
v. Payne, 706 S.W.2d 304, 305 (Tex. 1986); London Mkt., 95 S.W.3d at
705; In re Est. of Dilasky, 972 S.W.2d 763, 767 (Tex. App.BCorpus Christi 1998, no pet.).  AThe general rule is that when a suit is
filed in a court of competent jurisdiction, that court is entitled to proceed
to judgment and may protect its jurisdiction by enjoining the parties to a suit
subsequently filed in another court of this state.@  Gannon,
706 S.W.2d at 306-07 (citing Cleveland, 285 S.W. at 1072).  The Texas Supreme Court has determined that
there are four instances in which an anti‑suit injunction is
appropriate:  (1) to address a threat to
the court's jurisdiction; (2) to prevent the evasion of important public
policy; (3) to prevent a multiplicity of suits; or (4) to protect a party from
vexatious or harassing litigation.  Golden
Rule Ins. Co., 925 S.W.2d at 651; London Mkt., 95 S.W.3d at 705‑06.  There are no precise guidelines to determine
the appropriateness of an anti-suit injunction, and the circumstances of each
situation must be carefully examined.  See
Gannon, 706 S.W.2d at 307; London Mkt., 95 S.W.3d at 709.

            First, Fleming=s actions presented a threat to the
jurisdiction of the trial court.  See
discussion supra Parts B, C. 
Cameron County properly had jurisdiction over the underlying malpractice
cause of action and subsequent settlement dispute and was entitled to protect
that jurisdiction from cases subsequently filed in other courts of this
state.  See Gannon, 706
S.W.2d at 306-07; London Mkt., 95 S.W.3d at 705‑06. 

Second, Fleming=s efforts to move the settlement dispute to
Bexar County constituted an attempt to evade the important public policies
embodied in the venue statutes of the State of Texas.  See discussion supra Part
C.  The venue statutes are designed both Ato give a person who has been sued the right
to defend such suit in the county of his residence, except under well‑defined
exceptions,@ Newlin v. Smith, 150 S.W.2d 233, 234
(Tex. 1941), and to reduce forum shopping by litigants.  See Gonzalez, 159 S.W.3d at 622
(citing Sen. Comm. on Economic
Development, Bill Analysis, Tex. S.B. 32, 74th Leg., R.S. (1995)).  Fleming=s efforts attempted to circumvent both of
these goals. 








            After thoroughly reviewing the
record, we conclude that the trial court was correct in determining that there
was both a threat to its jurisdiction and a need to prevent the evasion of an
important public policy.  Consequently,
the trial court did not err in concluding that it had grounds to issue the
anti-suit injunction.  Fleming=s fourth issue is overruled.  

                                                  2.  Equitable Need for Injunction

In his fifth issue, Fleming asserts that
Ahumada and McAninch failed to prove that (1) they lacked an adequate remedy at
law to justify an anti-suit injunction, and (2) they would suffer irreparable
harm if the injunction did not issue.  

The principle of comity requires that courts
exercise this equitable power sparingly, and only in very special
circumstances.  London Mkt., 95
S.W.3d at 706.  The party seeking the
injunction has the burden to show that a clear equity demands the injunction. Id.  However, Fleming=s argument under this issue is based solely
on the premise that both Cameron and Bexar Counties were counties of proper
venue, and therefore the jurisdictional dispute is governed by the Afirst-filed@ rule. 
See Lancaster v. Lancaster, 291 S.W.2d 303, 305 (Tex. 1956).  To the contrary, we have determined that
Bexar County is an improper venue and that the Afirst-filed@ rule is inapplicable in this case.  See discussion supra Parts B,
C.  Allowing the Bexar County suit to
continue would have forced appellees to defend themselves in an improper
venue.  Furthermore, Ait has long been the policy of the courts
and the legislature of this state to avoid a multiplicity of lawsuits.@  See
Gonzalez, 159 S.W.3d at 623 (citing Wyatt, 760 S.W.2d at 246.  Thus, we conclude that a clear equity
justified the issuance of the anti-suit injunction.  Fleming=s fifth issue is overruled. 

                                                         3.  Breadth of Injunction








In his first issue, Fleming contends the
trial court abused its discretion in granting an anti-suit injunction against
him which prevented him from pursuing any claims that Ahumada and McAninch
violated the confidentiality agreement. 
In its judgment of January 30, 2003, the trial court enjoined Fleming
from Adirectly or indirectly . . . pursuing a
claim for violation of the confidentiality provision of the settlement
agreement against [Ahumada] or [McAninch] for any conduct or disclosures made
in connection with the defense or prosecution of the Texas Gulf Trawling case.@

In general, a permanent injunction Amust be narrowly drawn and
precise."  Holubec v.
Brandenberger, 111 S.W.3d 32, 40 (Tex. 2003) (quoting Brown v. Petrolite
Corp., 965 F.2d 38, 51 (5th Cir. 1992)). 
It must not Agrant relief which is not prayed for nor be
more comprehensive or restrictive than justified by the pleadings, the evidence,
and the usages of equity."  Id.
at 39 (citing 6 L. Hamilton Lowe, Texas:
Remedies ' 244 at 237 (2d ed. 1973)).  

The record reflects the injunction granted
by the trial court goes beyond protecting its jurisdiction and protecting the
public policies of Texas and has the effect of preventing Fleming from ever
being able to enforce his rights under the settlement agreement by bringing
suit in a court of proper venue.  Accordingly,
we hold the injunction to be overly broad. 
See id. at 39-40 (citing Villalobos v. Holguin, 208 S.W.2d
871, 875 (Tex. 1948) (stating that an injunction should not Abe so broad as to enjoin a defendant from
activities which are a lawful and proper exercise of his rights.@)). 
Fleming=s first issue is sustained.

                                                     E.  Declaratory
Relief








In his sixth issue, Fleming contends the
trial court erred in granting declaratory relief to Ahumada and McAninch
because (1) the requested relief was already the subject of a prior pending
suit, (2) a party may not obtain declaratory relief concerning what evidence
may be admitted in another suit, (3) the requested declaratory relief altered
rather than declared the existing rights and relations between the parties, and
(4) the requested relief was speculative or hypothetical and thus, not
justiciable.

                                                         1.  Prior Pending Action

We first note that Fleming is generally
correct in asserting that the Declaratory Judgments Act is "not available
to settle disputes already pending before a court.@  BHP
Petroleum Co. v. Millard, 800 S.W.2d 838, 841 (Tex. 1990).  This limitation prevents use of a declaratory
judgment action to Adeprive the real plaintiff of the
traditional right to choose the time and place of suit.@  Id.
(quoting Abor v. Black, 695 S.W.2d 564, 566 (Tex. 1985)).  However, for a prior proceeding to preclude
action under the Declaratory Judgments Act, the proceeding or action must be
between the same parties and must be able to adjudicate the issues involved in
the declaratory action.  Tex. Liquor
Control Bd. v. Canyon Creek Land Corp., 456 S.W.2d 891, 895 (Tex. 1970);
Hous. Auth. of City of Harlingen v. Valdez, 841 S.W.2d 860, 867 (Tex. App.BCorpus Christi 1992, writ denied).  Not only did Bexar County not have proper
venue, but Cameron County had previously established its authority to
adjudicate disputes between the parties arising from the underlying
proceeding.  See State v. Morales,
869 S.W.2d 941, 947 (Tex. 1994) (noting that Declaratory Judgments Act is
procedural device for deciding case already within court=s jurisdiction).  Consequently, the actions taken by Fleming in
Bexar County did not preclude Ahumada=s assertion of an action for declaratory
judgment in Cameron County.

                         2.  Admissibility of Evidence in the Texas
Gulf Trawling Case








We next note that the parties= arguments regarding the ability of either
the settlement agreement or a declaratory judgment to determine what evidence
is admissible in the Texas Gulf Trawling case are inapposite to the issues at
hand.  Nothing in appellees= petition for declaratory relief nor in the
declaratory judgment issued by the trial court speaks to the potential
admissibility of evidence in the related lawsuit.  The issue at hand is whether certain
information, if voluntarily disclosed by Ahumada himself, will violate the
non-disclosure clause, not whether the settlement agreement can be used to
dictate what may or may not be admitted by the trial court in the related
proceeding.  Cf. Scott v. McIlhany,
798 S.W.2d 556, 559-60 (Tex. 1990) (discussing inability of litigants to use
private agreements to block discovery of information and testimony sought by
third parties); In re Cont=l Ins., 994 S.W.2d 423, 426 (Tex. App.BWaco 1999, orig. proceeding) mand. granted In
re Union Pac. Res. Co., 22 S.W.3d 338 (Tex. 1999) (discussing limitations
on contractual provisions to require litigant to Araise frivolous objections or grounds for
refusing to produce discoverable information@). 

                                                   3.  Alteration of the Agreement

Fleming additionally complains that the
declaratory judgment altered the rights and relations between the parties
instead of merely construing the settlement agreement.  However, aside from general assertions that
the settlement agreement was Aplain on its face@ and unambiguous, that construction of the
agreement was limited to the plain meaning of the words, and that Ahumada=s declaratory judgment action was an attempt
to change the agreement under Athe ruse of construing it,@ Fleming offers no specific arguments or
citations to the record to explain to this Court how the trial court=s interpretation altered the rights of the
parties.  Therefore, we consider this
complaint to be inadequately briefed.  See
Tex. R. App. P. 38.1(h).

 








                                                           4.  Speculative Relief

Fleming next argues that the declaratory
relief granted by the trial court was speculative or hypothetical and, thus,
not justiciable.  Under the Declaratory
Judgments Act, a Acontract may be construed either before or
after there has been a breach.@  Tex. Civ. Prac. & Rem. Code Ann. ' 37.004(b) (Vernon 1997).  The Act thereby provides preventive relief,
empowering a Acourt to adjudicate or declare the rights of
the parties where there has arisen a real controversy before the wrong actually
takes place.@  RR
Comm=n v. Houston Nat=l Gas Corp., 186 S.W.2d 117, 123 (Tex. Civ. App.BAustin 1945, writ ref=d w.o.m.). 
Nonetheless, the Act does not constitute Aan open‑ended invitation to parties
seeking interpretation of their contracts. 
There must be some showing that litigation is imminent between the
parties unless the contractual uncertainties are judicially resolved.@  Paulsen
v. Tex. Equal Access, 23 S.W.3d 42, 46 (Tex. App.BAustin 1999, pet. dism=d); see also Tex. Civ. Prac. & Rem. Code Ann. ' 37.004(a) (Vernon 1997) (AA person interested under a . . . contract .
. . may have determined any question of construction or validity arising under
the instrument . . . and obtain a declaration of rights, status, or other legal
relations thereunder.@).  In
addition, issues raised under the Act Amay not be hypothetical or contingent, and
the questions presented must resolve an actual controversy.@  Port
Isabel/South Padre Island Taxpayers Ass=n v. South Padre Island, 721 S.W.2d 405, 407 (Tex. App.BCorpus Christi 1986, no writ) (citing Empire
Life Ins. Co. v. Moody, 584 S.W.2d 855, 858 (Tex. 1979)).  A declaratory judgment may not be Apremised upon the occurrence of a future,
hypothetical event.@  Valdez,
841 S.W.2d at 866.








In their petition, Ahumada and McAninch
asked the trial court for a declaratory judgment that the confidentiality
provision contained in the Settlement Agreement does not preclude pursuit of the
Texas Gulf Trawling case.  The
declaratory judgment subsequently granted by the trial court stated:

[N]othing in the Settlement Agreement,
specifically including the confidentiality provision of the Settlement
Agreement, precludes Mr. Ahumada and his counsel from conducting discovery,
asserting any relevant claims or defenses in pleadings, offering or presenting
evidence, presenting argument of counsel, or prosecuting any claim or defense
in the related [Texas Gulf Trawling] proceeding. . . .  

 

However, the trial court further declared: 

 

[N]one of the actions taken by Mr. Ahumada
or Mr. McAninch in the Texas Gulf Trawling Action, including the announcement
of the settlement in this case, the designation of expert witnesses, the filing
of a motion to disqualify, or the filing of pleadings, constitutes a violation
of any provision of the Settlement Agreement, specifically including the
confidentiality provision of the Settlement Agreement.

 

We conclude the trial court=s declaration that the settlement agreement
does not prohibit the prosecution of the Texas Gulf Trawling case is a proper
subject for resolution under the Declaratory Judgments Act.  Such a declaration simply defines the status
and legal relations among the parties under the settlement agreement.








However, we conclude that the trial court=s declaration that none of the actions taken
by Ahumada or McAninch constitutes a violation of the settlement agreement is
an improper subject matter for a declaratory judgment action.  A declaratory judgment is proper when it will
serve to settle the controversy between the parties.  Cal. Prod., Inc. v. Puretex Lemon Juice,
Inc., 334 S.W.2d 780, 783 (Tex. 1960); Valdez, 841 S.W.2d at
867.  By determining whether the actions
taken by Ahumada and McAninch to date violated the settlement agreement, the
trial court settled nothing; the non-disclosure provision is still in place and
the related Texas Gulf Trawling proceeding is still pending.  Whether additional actions taken or
information disclosed in the Texas Gulf Trawling case will violate the
non-disclosure provision depends upon the occurrence of a future, hypothetical
event and is improperly reached by the trial court.  See Valdez, 841 S.W.2d at 867; Stop
>N Go Mkt. of Tex. v. Executive Sec. Sys.,
Inc., 556 S.W.2d 836, 837
(Tex. App.BHouston [14th Dist.] 1977, no writ); see
also Cal. Products, 334 S.W.2d at 783 (holding that Aa declaratory judgment should not be based
upon facts which are particularly subject to mutation and change.@). 
Further, a declaration regarding whether actions taken to date have
violated the settlement agreement is contrary to the principle that Athe Declaratory Judgments Act was not
intended to provide for the >piecemeal= trial of lawsuits.@  Stop
>N Go, 556 S.W.2d at 837 (citing United Serv. Life Ins. Co. v. Delaney,
396 S.W.2d 855, 858 (Tex. 1965)). 
Fleming=s sixth issue is sustained in part.

                                                                F.  Mootness

In his seventh issue, Fleming complains that
once he non-suited McAninch from the Bexar County case on August 28, 2002,
McAninch=s claims for declaratory and injunctive relief
were moot, and he no longer had standing to intervene in Ahumada=s declaratory judgment action.          








In order to establish standing, a plaintiff
must show that he Ais personally aggrieved, regardless of
whether [he] is acting with legal authority.@  Nootsie,
Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 661 (Tex. 1996)
(citing Hunt v. Bass, 664 S.W.2d 323, 324 (Tex. 1984)).  In Texas, the general test for standing is
whether (a) there is a real controversy between the parties, which (b) will be
actually determined by the judicial declaration sought.  Nootsie, 925 S.W.2d at 662 (citing Tex.
Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993)
(quoting Bd. of Water Eng=rs v. City of San Antonio, 283 S.W.2d 722, 724 (Tex. 1955).

When Fleming filed suit in Bexar County, he
asserted that McAninch violated the confidentiality provision of the settlement
agreement by filing documents on behalf of Ahumada in the Texas Gulf Trawling
case.  By non-suiting McAninch from the
Bexar County suit without prejudice, Fleming may have eliminated any current
pending litigation against McAninch, but he did not eliminate the controversy
between the parties.  McAninch has no
guarantee that Fleming will not once again initiate action against him for
violation of the settlement agreement.  See
Del Valle Ind. Sch. Dist. v. Lopez, 863 S.W.2d 507, 511 (Tex. App.BAustin 1993, writ denied).  Because a present, justiciable controversy
still existed between McAninch and Fleming, McAninch had a valid cause of
action under the Declaratory Judgments Act. 
Fleming=s seventh issue is overruled. 

                                                              G.  Conclusion

That portion of the trial court=s judgment declaring that none of the
actions taken by Ahumada or McAninch in the Texas Gulf Trawling Action
constitutes a violation of the settlement agreement is reversed.  Judgment is rendered that the portion of the
trial court=s judgment declaring that none of the
actions taken by Ahumada or McAninch in the Texas Gulf Trawling Action
constitutes a violation of the settlement agreement is set aside.








The trial court=s anti-suit injunction is modified to
reflect that Tommy Wayne Fleming, his agents, servants and employees, are
enjoined from directly or indirectly pursuing a claim against Patricio Ahumada
and Edwin L. McAninch in any county other than Cameron County for violation of
the confidentiality provision of the settlement agreement for any conduct or
disclosures made in connection with the defense or prosecution of the Texas
Gulf Trawling case.  As modified, the
remaining portion of the trial court=s judgment is affirmed.

 

 

FEDERICO G. HINOJOSA

Justice

 

Dissenting
Opinion by Justice Castillo

 

Opinion
delivered and filed this

the
18th day of May, 2006.