

NUMBER 13-12-00430-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

---

TV AZTECA, S.A.B. DE
C.V. AND PATRICIA CHAPOY,                                    Appellant,

v.

GLORIA DE LOS ANGELES TREVINO
RUIZ, INDIVIDUALLY AND ON BEHALF
OF HER MINOR CHILD, ANGEL GABRIEL
DE JESUS TREVINO, AND ARMANDO
ISMAEL GOMEZ MARTINEZ,                                      Appellees.

---

On appeal from the 139th District Court
of Hidalgo County, Texas.

---

# Memorandum Opinion

**Before Chief Justice Valdez and Justices Benavides and Longoria**
**Memorandum Opinion by Chief Justice Valdez**

In this interlocutory appeal, appellants, TV Azteca, S.A.B. de C.V. and Patricia

Chapoy, challenge the trial court's granting of a temporary anti-suit injunction prohibiting

appellants from pursuing a lawsuit in Mexico against appellees, Gloria de los Angeles Trevino Ruiz, individually and on behalf of her minor child, Gabriel de Jesus Trevino, and Armando Ismael Gomez Martinez. We reverse and remand.

## I.  BACKGROUND

Appellees sued appellants for, among other things, defamation on April 14, 2009, (the "Texas Suit"). On April 20, 2012, appellees filed a verified application for temporary restraining order and injunction relief. In their application for temporary restraining order and injunction, appellees alleged, among other things, the following:  (1) they had made numerous attempts to serve appellants, who resided in Mexico; (2) appellees' attempts at serving appellants "were rejected"; (3) appellees attempted to serve appellants "through the Hague Convention and International Judicial Assistance" but that service was "rejected and returned unserved"; (4) appellees filed a first and second "Request for Service Abroad of Judicial and Extrajudicial Documents" and both attempts at service were "rejected and returned unserved"; (5) appellees then attempted to serve appellants "by [p]ublication and obtained the trial court's authorization to do so on or about December 1, 2009.  Like the other attempts, this attempt at service was rejected and returned unserved"; (6) "On September 9, 2010, [appellees] filed a Motion for Substitute Service. [Appellees] then filed an Amended Motion for Substituted Service on or about September 28, 2011"; (7) on October 3, 2011, appellees filed a second amended motion for substitute service requesting that appellees be allowed to serve appellants by "taping a true copy of the citation, with a copy of the petition attached, to the wall next to the security wall next to the security booth at Door Two, at the headquarters of TV Azteca, S.A. de C.V., Periferco Sur, Number Fourth Thousand One Hundred Twenty-One (4121), Colonia

2

Fuentes de Pedregal, Postal Code Fourteen Thousand One Hundred Forty-One, Mexico City, Federal District"; (8) the trial court allowed appellees to serve appellants in the manner requested; (9) appellants were served in conformity with the above-described manner on November 25, 2011; (10) appellants filed a special appearance on December 15, 2011; (11) "On or about January 26, 2012" appellants "filed a lawsuit in Mexico in the Juzgado Sexto De Lo Civil styled TV Azteca, S.A.B. de C.V. y Otra vs. Victor Jorge Leon Maldonado Alfredo Gabriel Miranda Solano, Gloria de los Angeles Trevino Ruiz, por si y en representacion de su menor hijo Angel Gabriel de Jesus Trevino y Armando Ismael Gomez Martinez, cause number 253/12 (the 'Mexico City Suit')"; (12) appellees had not yet been served by appellants in the Mexico City Suit; (13) in the Mexico City Suit, appellants were requesting that the Mexican court issue a court order stating that appellants had been illegally served by appellees, the Texas court "has no jurisdiction to hear the legal action filed by" appellees, and the Mexican notary who served appellants did not follow proper procedures; (14) in the Mexico City Suit, appellants were also seeking an anti-suit injunction prohibiting appellees from continuing their Texas Suit; (15) appellants were "attempting to improperly enjoin the Hidalgo County Court, which is the court where the [Texas Suit] was first filed, from proceeding with the case to final judgment and are attempting to have jurisdiction determined . . . ."; and (16) the trial court should enter an injunction to prevent appellants from pursuing their Mexico City Suit. Appellees argued, among other things, "that the existence of multiple lawsuits and the threat to the court's jurisdiction is a legitimate basis for finding irreparable injury and awarding injunctive relief." Appellees also argued that an anti-suit injunction was necessary "to protect [appellees and appellees'] representatives from vexatious and harassing

3

litigation." On May 3, 2012, the trial court signed a temporary restraining order ordering appellants to immediately desist and refrain from taking further action in prosecuting their Mexico City Suit and/or filing any other litigation against appellees.

On June 4, 2012, the parties entered a rule 11 agreement to extend the temporary restraining order until June 29, 2012.[1] In that rule 11 agreement, the parties also agreed that appellants' special appearance would be heard on June 28, 2012 and that appellees' application for temporary injunction would follow on that date. The parties further agreed that the temporary restraining order would expire on June 29, 2012 unless the parties agreed to extend the TRO or "the trial court issue[d] a written ruling on [appellees'] Application for Temporary Injunction, whichever occurred earlier." On June 19, 2012, appellees filed an amended emergency motion for continuance of the June 28, 2012 special appearance hearing. Subsequently, the parties signed an agreed order that the special appearance hearing would be held on July 26, 2012. The agreed order resetting the special appearance hearing did not mention the temporary injunction hearing.[2] The temporary injunction hearing was not rescheduled.

On June 28, 2012, the parties appeared in the trial court on appellees' motion for contempt and application for temporary injunction and appellants' motion to compel discovery. At this hearing, appellants' trial counsel told the trial court to decide whether it had jurisdiction first. Appellees' trial counsel responded by stating that the parties had entered into several rule 11 agreements to extend the TRO and have it heard on the same day as the special appearance. Appellees' trial counsel also acknowledged that they had

---

[1] The parties documented that the temporary restraining order had previously been extended by orders dated May 10 and May 31, 2012.

[2] The agreed order is written in cursive, and some of the words are illegible.

4

agreed that extension of the TRO would not result in a waiver of appellants' special appearance. Appellees' trial counsel noted that, by agreement, the special appearance hearing had been reset for July 26, 2012, and that appellants would not agree to an extension of the TRO until that date. Thus, appellees' trial counsel argued that appellants would be free to continue their action against appellees in Mexico, which could potentially be very expensive and lead to criminal proceedings against appellees. Appellees' trial counsel argued that appellants "want[ed] this gap [in the TRO] so that they can rush forward the ball in Mexico and—and there is a remand for them."

Appellees' trial counsel asked appellants to "once again, . . . extend the T.R.O. by agreement until the—until the special appearance can be determined." Appellees' attorney stated, "But if they choose to appear and defend the Temporary Injunction before getting a determination on their special appearance, then they waive the personal jurisdiction argument. That's going to be behind them." Appellants' trial counsel responded that if the parties extended the TRO, then appellants would be disadvantaged in their Mexican cause of action because they would be unable to respond to a motion to dismiss and appellees would then win by default. Appellees' trial counsel clarified that "the Notorio" or notary had been served by appellants in Mexico for the Mexico City Suit; "the Notorio" had filed an answer and a motion to dismiss in that case; and appellees had not been served by appellants in the Mexico City Suit. Thus, appellees' trial counsel stated that the trial court could enjoin appellants from serving appellees in the Mexican lawsuit and from continuing their cause of action in Mexico.

Before the parties presented their evidence for the temporary injunction, appellants' trial counsel asked the trial court to note that the parties' rule 11 agreement

resetting the special appearance hearing to July 26, 2012, included an agreement by the parties that appellants were not waiving their special appearance by appearing for the temporary injunction hearing. Appellees' trial counsel responded that his understanding of the rule 11 agreement was

> that their—that we, the special appearance hearing, and the hearing on the Temporary Injunction had been set for the same day in the past. And each time they were extended, they were extended together. And when the T.R.O. was extended, the T.R.O. that this Court entered was extended so that it could remain in place until we had a hearing on the special appearance; that [appellants'] agreement to extend the T.R.O. would not be used by [appellees] as a waiver of their special appearance.
>
> . . . .
>
> But now what we find ourselves today is that the special appearance hearing has been set by agreement to a date after which the Temporary Injunction is being heard.
>
> And once again, we offer the [appellants] the opportunity to, if they will by agreement continue to extend the T.R.O. until the date of the special appearance hearing, we can avoid this problem.
>
> But if they insist on going forward and defending the Temporary Injunction today, when the special appearance hearing is off in the future, on the 26th, then, they're going to have a problem. Because their primary defense as set out in their response is that this Court has no jurisdiction to enter a Temporary Injunction against them. That's their main defense.
>
> Hey, we're specially appearing; we have no—this Court has no jurisdiction to enter a Temporary Injunction. And there is authority to say that the court can't enjoin a party over which it has no jurisdiction. That's fine.
>
> But in order to resolve this problem, because obviously we—there's a lawsuit pending here and we have rights. In order to resolve the problem, Rule 120(a) of the Texas Rules of Civil Procedure addresses this.
>
> And it addresses it very clearly. It says that they have—that the court shall determine this special appearance before it determines a motion to transfer venue or other . . . by . . . Well, by—by their agreement to—to have this special appearance heard weeks after the hearing on this Temporary Injunction, if they insist on proceeding today on the Temporary Injunction

6

and defending it rather than agreeing to continue to extend the T.R.O. as they have done all along, without any problems, I don't know what happened this time, then—then, yes, Your Honor, it would constitute a waiver.

Appellants' trial counsel replied,

> I got his word and I got his writing, we can fight about whether he's right or wrong or trying to twist his way out of it right now.
>
> Today TV Azteca and Patty Chapoy object to this injunction proceeding, okay? We think the Judge's easiest way to handle this is to address the special appearance for all the things we talked about this morning. So we—we need you to formally tell us you're overruling our objection and insisting on this injunction going forward.
>
> We're not asking for anything other than a discovery related to the special appearance, but we are not asking for this hearing, they are. That's why we have a writing to protect us. I have got suspenders; I've got belts. I still have to deal with it. So we're objecting to going forward on the Temporary Injunction.
>
> You order us to go forward, our objection is noted, our special appearance is still protected and we can proceed.
>
> This whole thing is much to do about nothing, Your Honor.

The trial court stated that it would proceed with the temporary injunction hearing. The trial court then took judicial notice of "all documents on file." The trial court then heard evidence on the temporary injunction.

At the hearing, appellees presented testimony from Jose Humberto Rios Lozano and Javier Juarez, and appellants presented testimony from David Lopez. Rios, a licensed Mexican lawyer, testified that he had been licensed in Mexico since 1995.[3] During his testimony, Rios identified Petitioner's Exhibit No. 1 as a document showing that appellants had filed a lawsuit in a Mexican court, and Petitioner's Exhibit No. 2 —the

---

[3] At the hearing, the Trevi Parties' trial counsel referred to Jose Humberto Rios Lozano as "Mr. Rios." Thus, we will refer to him accordingly.

English translation of the lawsuit. The trial court admitted both exhibits. Appellees' trial counsel asked Rios if in their Mexican suit, appellants were seeking an injunction preventing appellees from continuing their lawsuit in Texas until the Mexican lawsuit had been completed and an order declaring that the 139th District Court of Hidalgo County had no jurisdiction to hear appellees' lawsuit against appellants in Texas. Rios replied, "Yes," to each question. Appellees' trial counsel asked, "If a—if Ms. Trevi and Mr. Gomez do not comply with the orders of this Mexican court, even though this is a civil lawsuit, do the remedies include possible arrest and imprisonment?" Rios replied, "Yes, sir." Rios explained the procedures in Mexico that would allow the civil lawsuit to result in arrest and imprisonment as follows: "Well, based on the Code of Civil Procedures of the Federal District, Article 73. And I want to proceed to read it. . . . The judges, in order to make the determination be complied, may employ any of these means of compliance." Rios stated that the applicable section of the code says, "Arrest up to 36 hours. But, in case of non-complying with this request, also may apply Article 283 of the Criminal Code of the Penal Code for the Federal District on the 19th title." Rios continued, "[I]t says, [t]he penalty would be from one up to five years in prison when the non-compliant or resistant be a judicial order, or by complying with the sentence."

Appellants' witness, David Lopez, testified that he is a Texas lawyer who has testified in courts around the United States as an expert on Mexican law. Lopez stated that he co-authored a book titled Mexican Law, which is used as a teaching text in law schools around the country. Lopez said that his book has been "called the leading English language treatise on Mexican law." Lopez clarified that he is not licensed to practice law in Mexico. Lopez disputed Rios's testimony that appellees could be arrested and/or put

8

in jail if they failed to comply with a civil trial court order. Lopez stated that the code had been changed and that the Mexican trial court no longer had the remedy of arrest and jail to enforce its orders.

Lopez explained that Mexican civil courts differ from Texas courts because in Mexico there is usually no jury in a civil proceeding, and the judge "takes the case from the parties" and "really becomes the master of that" case. Lopez stated that in Texas, as the attorney, he is "developing" the case and the evidence; however, in Mexico, "it's up to the judge to develop the evidence in a sense. The judge directs the evidence gathering." Lopez said that although the lawyers have input, "at the end of the day, it's the judge in Mexico who largely controls the disposition of the proceedings." Lopez explained that the Mexican "judges operate under strict deadlines in a case, each triggered by a preceding event. Like a deadline for service, a deadline for answer, a deadline to conduct different phases of the case. And that drives the judges to push forward the cases even if the parties aren't." Lopez testified that in Texas, lawyers have the ability to dismiss a case without prejudice, but that in Mexico, the difference between dismissals with prejudice and dismissals of lawsuits or claims is not clear, especially in cases like appellants' case against appellees in Mexico where two of the defendants have already been served and the other defendants live in the United States of America and have not been served.

Appellants' trial counsel asked, "Now is there any point to this Mexican lawsuit about the service of process besides just putting a finger in the eye of Gloria Trevi and Armando Gomez?" Lopez replied,

> What—what's interesting about [the Mexico City Suit] is the portion
> to me dealing with the notarios. Notarios in Mexico are not like notary

9

publics in Texas. They are trained lawyers with advanced training who undertake pretty rigorous examinations and essentially have lifetime appointments to be the notario in a particular geographic zone. So they're very privileged positions. They're monopoly positions, which means most notarios tend to be—it's a very lucrative position.

So these are very skilled quasi government officials who the state gives with [sic] authority.

The judge has legal authority to put people in jail and issue rulings, which we must obey because he is the government.

With a notario, it's not to that same degree, but they're also not private lawyers. They actually have government authority. Based on what I've read, the notario [who served appellants with appellees' Texas Suit] in this situation acted so clearly in violation of Mexican constitutional law and the law regulating notarios, as well as the Code of Civil Procedure that it was almost incumbent upon TV Azteca and Chapoy to initiate [the Mexico City Suit] at the time they did.

They also added the other two parties, I understand, the Gloria Trevino and her husband because they wanted those decisions to have binding effect on them.

In Mexico, because they are a civil law country, judicial decisions don't necessarily have the same binding effect that they would have in the United States. The stare decisis effect is not the same.

And as I understand it that was just done to make sure that whatever rulings were made as to the notario would also be applied to those parties involved in this case.

Lopez testified that a valid Mexican judgment can be enforced in Texas under the "[Texas] Civil Practices and Remedies Code," which sets out a procedure for domestication of foreign judgments. However, Lopez stated that whether a Mexican court has the authority to enjoin a Texas court is "laughable" and that "[n]o judge from Mexico is going to tell [the judge presiding over appellees' Texas Suit] what to do." According to Lopez, a judge in Mexico could issue an order stating that the trial court in this case does not have jurisdiction or "can't do something, or must do something, and its void from the

10

outset." Lopez believed that what appellants have requested in the Mexico City Suit is "clearly" something the Mexican court cannot do. Lopez elaborated, "And so what's happened in Mexico is you have a party asking for something that the chances of them getting are probably very low, if anything." Lopez explained that when the judge reviews appellants' request to "bind the 139th [the Texas trial court,] [s]he's going to deny that, if she follows the law."

Lopez testified that if the Texas trial court enjoined appellants from pursuing their Mexico City Suit, then "when a deadline comes up that they must satisfy, if [appellants] fail to satisfy it and it's something that triggers a death penalty sanction like has been discussed earlier, then that would alter the status quo by dismissing, by terminating claims that TV Azteca and Chapoy have." Lopez said, "In other words, the T.R.O. would effectively adjudicate the case in Mexico against TV Azteca and Chapoy." Lopez explained that usually in cases where there are two separately filed suits in different jurisdictions, the general rule is that whichever case was filed first will be decided first. According to Lopez, this case is different because there is no treaty with Mexico regarding the first-filed rule. Lopez stated, "In my experience, it's just sort of par for the course. It's what happens when you file a lawsuit in the United States that has a lot of facts coming out of Mexico."

On cross-examination by appellees' trial counsel, Lopez claimed that the version of the Mexican code of civil procedure that Rios had relied upon had been revised and that although under the previous code, a judge had the authority to arrest and jail someone for noncompliance with a court order, the legislature "deleted that capacity." Lopez explained, "So that the version now in effect has a different Subsection 4 which

11

does not allow for arrest." Appellees' trial counsel asked whether "a Mexican court can enjoin the parties before it" even though the Mexican court had no authority to enjoin a Texas court? Lopez replied, "Yes." Lopez agreed that a party who violated the Mexican court's injunction could be held in contempt by the Mexican court that issued the injunction. Lopez, however, disagreed that an available remedy for contempt of court orders included arrest and imprisonment. Appellees' trial counsel asked Lopez to explain what remedies the Mexican court had if someone violated a Mexican court's injunction. Lopez responded that "the judge can impose fines, he can use the assistance of public officials. That's generally in a situation where the judge orders somebody to deliver something or provide something and they don't. He can undertake a search, and he can order the presentation of witnesses to public officials." Lopez emphasized that "what's missing" from the new code is the provision allowing a Mexican judge to arrest someone for contempt. Lopez acknowledged that appellants had filed a "second lawsuit" in Mexico against appellees, however, he stated that he had not reviewed anything related to that second suit.

After hearing the witnesses' testimony, the trial court summed up the arguments as follows:

> So the basis, I mean, correct me if I'm wrong. What you guys [appellants] are saying, and I'm saying the Respondent says that if I interfere with the case in Mexico, it could result in the death penalty in a case.
>
> And [appellees are] saying that what they're trying to do in Mexico is just wishy-washy, and they're trying to affect the rights in this lawsuit here.

Appellees' trial counsel responded that the stakes were actually higher because if appellants were allowed to proceed in the Mexican suit "and get the injunction that they're

clearly asking for, once the [Mexican] court issues an injunction in Mexico enjoining [appellees] from continuing to judgment here until the Mexican lawsuit concludes over there, then my clients run the real and present danger of being held in contempt and being subjected to whatever remedies are available under Mexican law for contempt."

Appellants' trial counsel argued that appellants have a "fundamental right" to protect themselves in Mexico. Appellants' trial counsel also stated that the trial court did not have jurisdiction because the alleged defamation did not occur in Texas. Appellees' trial counsel argued that the trial court could issue the injunction preventing appellants from pursuing any lawsuits that interfered with the Texas suit "to protect its jurisdiction to prevent multiplicity of lawsuits, to protect important public policy." Appellees' trial counsel urged that due to the "extraordinary circumstances" present in allowing appellants to pursue the Mexico City Suit, the appellees' application for an anti-suit injunction must be granted. Appellees' trial counsel stated that appellees had every intention in continuing their Texas Suit and that put appellees in danger of being in contempt of any injunction filed by a Mexican court. The trial court asked, "[Y]ou're saying that your lawsuit was here before anything else was filed." And appellees' trial counsel responded, "Absolutely, Judge. In fact, they didn't file their lawsuit—their lawsuit was a reaction to our service of process on them. And that's undisputed. Nobody disputes that [appellees] filed a lawsuit first."

The trial court asked appellees' trial counsel to address appellants' argument that appellees had not established "that you had a case that you could win . . . . That you won't prevail." Appellees' trial counsel responded that he did not believe that a party requesting an anti-suit injunction had "to get into the trial on the merits." Appellees' trial

13

counsel then stated that the trial court had admitted Exhibits 15 and 16, which were Trevi's and Gomez's depositions. Appellees' trial counsel explained that they had both testified "as to the defamation," "as to the harm," and "as to the malice."

The trial court granted appellees' application for temporary injunction, which is in essence an anti-suit injunction prohibiting appellants from pursuing their Mexico City Suit. In the injunction, the trial court made the following relevant findings: (1) after being served with the Texas Suit, appellants filed a suit in Mexico "challenging" the trial court's jurisdiction in the Texas Suit; (2) in the Mexico City Suit, appellants are seeking to enjoin appellees from proceeding with the Texas Suit; (3) if the Mexican court grants the relief requested by appellants, the Mexican court may enforce the injunction "by contempt, up to and including arrest and imprisonment from one to five years"; (4) the parties had agreed to an extension of the temporary restraining order enjoining appellants "from, among other things, continuing to prosecute the Mexico City [Suit]"; (5) "Despite the agreed extension of the Temporary Restraining Order, [appellants] have continuing [sic] their prosecution of the Mexico City [Suit], and even filed a second lawsuit in Mexico against [appellees] (the "Second Mexican Lawsuit") in violation of the agreed Temporary Restraining Order"; (6) appellants' actions in violating the temporary restraining order by continuing to pursue the Mexican City Suit "constitutes a threat to the jurisdiction of this Court"; (7)

> In order to preserve this Court's jurisdiction and stop [appellants'] attempts to deprive this Court of jurisdiction, and in order to protect a vital public policy, and to protect the parties from multiple lawsuits, the risk of conflicting and inconsistent results, and a waste of resources, and the threat of arrest and imprisonment, it is necessary for this Court to enter this Temporary Injunction to stay [appellants] from prosecuting the Mexico City Suit, the Second Mexican Lawsuit, and any other civil, criminal or administrative proceedings, and from filing any documents, pleadings, motions, or

14

discovery requests in the Mexico City Suit and the Second Mexican Lawsuit, with the sole exception of filing a motion to dismiss or the equivalent under Mexican procedural law.

(8) appellants filed a motion to quash the service of citation and a special appearance challenging the trial court's jurisdiction; and (9) "The Mexico City [Suit], and apparently the Second Mexican Lawsuit, seek an adjudication of the same issues from a Mexican tribunal."

In its injunction, the trial court ordered, in pertinent part, the following:

IT IS THEREFORE ORDERED that Defendants TV Azteca, S.A.B., DE C.V. and PATRICIA CHAPOY and their respective agents, representatives, attorneys, and those acting in concert therewith, are hereby enjoined from:

a. initiating or prosecuting any criminal, civil or administrative proceeding against Plaintiffs or any of Plaintiffs' employees, agents, representatives, or attorneys; and

b. furthering or prosecuting the Mexico City Suit and the Second Mexican Lawsuit including, but not limited to the filing of any documents, pleadings, motions, discovery requests, or obtaining any judgment or any other relief, other than seeking a dismissal of the Mexico City Lawsuit and the Second Mexican Lawsuit.

IT IS FURTHER ORDERED that Defendants TV Azteca, S.A.B., DE C.V., and Patricia Chapoy and their respective agents, representatives, attorneys, and those acting in concert therewith, immediately seek dismissal, or the equivalent thereof, the claims asserted against TREVI and GOMEZ and their attorneys in the Mexico City [Suit] and the Second Mexican Lawsuit. TREVI and GOMEZ have stipulated that they do not oppose their dismissal from the Mexico City [Suit] and the Second Mexican Lawsuit and waive any claim for fees and costs which may have been recoverable in the Mexico City [Suit] and the Second Mexican Lawsuit if TV Azteca and Chapoy comply with this Temporary Injunction.

## II.  STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's decision to grant or deny a temporary injunction for an abuse of discretion. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). A trial

court abuses its discretion if its decision was so arbitrary it exceeded the bounds of reasonableness. *See id.* We view the evidence in the light most favorable to the trial court's order and indulge all reasonable inferences in favor of its decision. *City of McAllen v. McAllen Police Officers Union*, 221 S.W.3d 885, 893 (Tex. App.—Corpus Christi 2007, pet. denied). A trial court does not abuse its discretion if it bases its decision on conflicting evidence where evidence in the record reasonably supports the trial court's decision. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978). However, the review of a trial court's determination of the legal principles controlling its ruling is much less deferential. *Atkinson v. Arnold*, 893 S.W.2d 294, 297 (Tex. App.—Texarkana 1995, no writ) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)). "A trial court has no 'discretion' in determining what the law is or in applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id.* (internal citations omitted).

A temporary injunction is an extraordinary remedy, and is not issued as a matter of right. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993).[4] Texas courts have the power to prevent parties from proceeding with litigation filed in other state courts by issuing an anti-suit injunction. *See Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649, 651 (Tex. 1996) (per curiam); *Gannon v. Payne*, 706 S.W.2d 304, 305–06 (Tex. 1986) ("The general rule is that when a suit is filed in a court of competent jurisdiction, that court is entitled to proceed to judgment and may protect its jurisdiction by enjoining the parties to

---

[4] A trial court issues a temporary injunction in order to preserve the status quo until a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993). The status quo is the last, actual, peaceable, non-contested status that preceded the pending controversy. *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (orig. proceeding); *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 577 (Tex. App.—Austin 2000, no pet.).

a suit subsequently filed in another court of this state."); *Monsanto Co. v. Davis*, 25 S.W.3d 773, 778 (Tex. App.—Waco 2000, pet. denied). The Texas Supreme Court has held that the trial court may issue an anti-suit injunction for the following reasons: (1) to address a threat to the court's jurisdiction; (2) to prevent the evasion of important public policy; (3) to prevent a multiplicity of suits; or (4) to protect a party from vexatious or harassing litigation. *Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 623 (Tex. 2005).

However, under the principle of comity, a trial court must exercise the equitable power to issue an anti-suit injunction sparingly, and only in very special circumstances. *Golden Rule Ins. Co.*, 925 S.W.2d at 651; *Christensen v. Integrity Ins. Co.*, 719 S.W.2d 161, 163 (Tex. 1986). Thus, the party seeking the anti-suit injunction must show that a clear equity demands the injunction. *Golden Rule Ins. Co.*, 925 S.W.2d at 651; *Harbor Perfusion, Inc. v. Floyd*, 45 S.W.3d 713, 718 (Tex. App.—Corpus Christi 2001, no pet.). In addition, the applicant must show that there is the potential for an irreparable miscarriage of justice. *Golden Rule*, 925 S.W.2d at 651–52.

### III.  DISCUSSION

In this case, the trial court determined that appellees would suffer an irreparable miscarriage of justice if it did not issue the anti-suit injunction. The trial court relied on evidence that a possibility existed that once the Mexican court ruled appellees' service of process was ineffective and issued its own injunction, appellees could face contempt of court charges that included a possibility of arrest. The trial court prohibited appellants "from prosecuting the Mexico City Suit, the Second Mexican Lawsuit, and any other civil, criminal or administrative proceedings, and from filing any documents, pleadings, motions, or discovery requests in the Mexico City Suit and Second Mexican Lawsuit . . . ."

17

By their third issue, appellants argue, among other things, that there was no threat of an irreparable miscarriage of justice in this case. Appellees respond that they proved that irreparable miscarriage of justice would occur because of the possibility that they could be arrested for contempt of court.[5]

An anti-suit injunction may issue only in very special circumstances that are usually very difficult to demonstrate. *See Christensen v. Integrity Ins. Co.*, 719 S.W.2d 161, 163 (Tex. 1986); *see also London Mkt. Insurers v. American Home Assurance Co.*, 95 S.W.3d 702 (Tex. App.—Corpus Christi 2003, no pet.) (affirming anti-suit injunction due to the existence of very special circumstances and the potential for an irreparable miscarriage of justice because evidence established the existence of a service-of-suit-clause in the insurance policies at issue wherein the appellant insurers agreed to submit to the jurisdiction chosen by the appellees and to be bound by that court's final decision). We must balance the Texas court's equitable power of issuing an anti-suit injunction with the principle of comity. *See Gannon*, 706 S.W.2d at 306–07. The injunction at issue must be required to prevent an irreparable miscarriage of justice. *Id.* at 307.

Here, the Mexican court has not enjoined appellees from proceeding with their Texas Suit, and the evidence shows that appellants are not entitled to such relief. Lopez

---

[5] Appellees also cite to the trial court's finding that appellants violated the prior temporary injunctions. We note that violating a temporary injunction has not been found to be grounds for issuing a temporary injunction or a basis for finding an irreparable miscarriage of justice. However, the trial court may have other remedies available such as ordering sanctions.

We also note that appellants' witness admitted that appellants have sought relief in the Mexico City Suit that they are not entitled to receiving. Specifically, Lopez testified he believed that what appellants have requested in the Mexico City Suit is "clearly" something the Mexican court cannot do. Lopez elaborated, "And so what's happened in Mexico is you have a party asking for something that the chances of them getting are probably very low, if anything." Lopez explained that when the Mexican judge reviews appellants' request to "bind the 139th [the Texas trial court,] [s]he's going to deny that, if she follows the law."

stated that if the Mexican court follows the law, it will not grant appellants' request to enjoin the Texas court. In addition, even assuming the Mexican court issues an injunction prohibiting the Texas court from proceeding with the Texas Suit, the evidence presented shows that the Texas court has no obligation to follow that order. Moreover, the evidence presented shows that the Mexican court may charge appellants with a criminal violation, not that the Mexican court would in fact do so. Rios testified that one remedy available to a Mexican court when a party disobeys an order and is held in contempt includes possible arrest and imprisonment. Thus, the evidence presented to the trial court shows that a Mexican court may, as one of many remedies, pursue criminal charges against a civil litigant if that party violates a court order. There is no evidence in this case, however, that the Mexican court has considered such a remedy or that the Mexican court will pursue that extreme remedy. In conclusion, no evidence was presented that appellants are entitled to the relief they have requested in Mexico, the Mexican court will rule in favor of appellants, the Mexican court will hold appellees in contempt, or the Mexican court will choose to have appellees arrested for failure to comply with any order. Accordingly, at this stage in the proceedings, it is pure speculation that appellees will be arrested and jailed for not complying with any court order in Mexico.[6] Because speculation cannot support an anti-suit injunction, we conclude that the trial court abused its discretion by issuing the injunction to protect appellees from a potential threat of being held in contempt and a possibility of arrest and imprisonment. *Frey*, 647 S.W.2d at 248; *Tex. Health Care Info. Council*, 94 S.W.3d at 853. Thus, we cannot conclude that appellees met their

---

[6] We make no determination regarding whether the trial court may issue an anti-suit injunction when there is clear evidence that a foreign court will file criminal charges against a party it has ordered to stop pursuing a suit in Texas.

burden of showing that the injunction is necessary to prevent an irreparable miscarriage of justice and that a clear equity demands the Texas court's intervention.[7] *See Gannon*, 706 S.W.2d at 308 ("Only in exceptional situations should a trial court issue an injunction prohibiting a foreign citizen from prosecuting an action in his home country."); *Golden Rule*, 925 S.W.2d at 651–52. We sustain appellants' third issue.[8]

## IV. CONCLUSION

Having found that the trial court had no basis to issue the anti-suit injunction, we reverse the trial court's judgment, dissolve the injunction, and remand for proceedings consistent with this opinion.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
30th day of April, 2014.

---

[7] We note that if an arrest were imminent, the harm would not be speculative. Moreover, we agree with appellees that "being arrested and jailed" is an irreparable injury. However, in this case, there is no threat of arrest and imprisonment, yet.

[8] Because we have determined that appellees have not shown an irreparable miscarriage of justice will occur, we need not determine whether appellees met their burden of showing that there is a threat to the court's jurisdiction, or that the injunction was required to prevent the evasion of important public policy, to prevent a multiplicity of suits, or to protect appellees from vexatious or harassing litigation. *See* TEX. R. APP. P. 47.1. ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."); *see also Gannon*, 706 S.W.2d at 306 (explaining that when a Texas trial court seeks to enjoin parties in a foreign country, an appellate court must adhere to strict guidelines, including the caveat of limited use); *Golden Rule*, 925 S.W.2d at 651–52 (explaining that absent proof of an irreparable miscarriage of justice, an anti-suit injunction should not issue). Because we have not addressed the above-mentioned justifications for issuing the injunction, we see no reason why the trial court could not revisit those issues again if and when appellees are able to show an irreparable miscarriage of justice.